**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE and** | ) |
| **SIERRA CLUB, INC.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )    **Case No. 1:06-2176(GK)** |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **TRANSPORTATION,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MOTION TO DISMISS OF**
**DEFENDANTS METROPOLITAN WASHINGTON COUNCIL OF GOVERNMENTS;**
**VINCENT C. GRAY, in his official capacity as Board Chair of the Metropolitan Council of**
**Governments; NATIONAL CAPITAL REGION TRANSPORTATION PLANNING**
**BOARD; AND KATHERINE HUTCHINS, in her official capacity as Chairperson of the**
**National Capital Region Transportation Planning Board[1]**

Defendants Metropolitan Washington Council Of Governments; Vincent C. Gray, In His

Official Capacity As Board Chair Of The Metropolitan Council Of Governments; National

Capital Region Transportation Planning Board; and Katherine Hutchins, In Her Official Capacity

As Chairperson Of The National Capital Region Transportation Planning Board ("Moving

Defendants") hereby move, pursuant to Fed. R. Civ. P. 12b(6), to dismiss Plaintiffs' Complaint

on the grounds that it fails to state a claim upon which relief can be granted.

---

[1] Filed simultaneously herewith, Defendants in the above-captioned case, JAY FISETTE, sued in his official capacity as Board Chair of the Metropolitan Council of Governments; and MICHAEL KNAPP, sued in his official capacity as Chairperson of the National Capital Region Transportation Planning Board, have served notice pursuant to Federal Rule of Civil Procedure ("FRCP") 25(d)(1), that they no longer serve in those capacities and that their successors, VINCENT C. GRAY, Board Chair of the Metropolitan Council of Governments, and KATHERINE HUTCHINS, Chairperson of the National Capital Region Transportation Planning Board, are automatically substituted as parties.

This Motion is based on the associated Memorandum of Points and Authorities in Support of the Motion, the record in this action, and any argument that this Court may hear on the Motion.

On February 21, 2007, the United States Department of Transportation ("DOT"), Mary Peters, in her official capacity of Secretary of DOT, the Federal Highway Administration ("FHWA"), and Richard Capka, in his official capacity as FHWA Administrator (collectively, "Federal Defendants") moved to transfer venue in this case to the United States District Court for the District Court of Maryland.  Docket Document 9.  On March 5, 2007, Plaintiffs filed an opposition to that Motion. Docket Document 10.  Moving Defendants do not believe that the instant Motion should interfere with the disposition of Federal Defendants' Motion to Transfer. The time period to respond to the instant Motion to Dismiss is similar in both this Court and the United States District Court for the District of Maryland.  *Compare* DDC Local Civil Rule 7 (requiring opposing memoranda to be filed within 11 days of the filing of a motion) with DMD Local Rule 105(2)(A) (requiring opposing memoranda to be filed within 14 days of the filing of a motion).  As a result, we believe the instant Motion can be promptly briefed and decided by the Court that has the case at that time that briefing is complete.

                                    Respectfully Submitted,


Date: March 8, 2007                 /s/ *Margaret N. Strand*
                                    Margaret N. Strand, D.C. Bar No. 936419
                                    Venable LLP
                                    575 7th St. NW
                                    Washington D.C.  20004
                                    (202) 344-4699 - Telephone
                                    (202) 344-8000 - Facsimile

Christopher R. Mellott, MD Bar No. 03734
Venable LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland  21201
(410) 244-7552 - Telephone
(410) 244-7742 - Facsimile

Lee Ruck
General Counsel
Metropolitan Washington Council of Governments
    and Washington Regional Transportation
    Planning Board
777 North Capitol Street, NE, Suite 300
Washington, DC 20002
(202) 962-3200 - Telephone
(202) 962-3201 - Facsimile

Counsel for Defendants
  Metropolitan Washington Council of Governments and
  National Capital Region Transportation Planning Board

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE and SIERRA CLUB, INC.,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) )   **Case No. 1:06-2176(GK)** |
| **UNITED STATES DEPARTMENT OF TRANSPORTATION,** *et al.,* | ) ) ) |
| **Defendants.** | ) ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS METROPOLITAN WASHINGTON COUNCIL OF GOVERNMENTS; VINCENT C. GRAY, in his official capacity as Board Chair of the Metropolitan Council of Governments; NATIONAL CAPITAL REGION TRANSPORTATION PLANNING BOARD; AND KATHERINE HUTCHINS, in her official capacity as Chairperson of the <u>National Capital Region Transportation Planning Board</u>[1]**

---

[1] Filed simultaneously herewith, Defendants in the above-captioned case, JAY FISETTE, sued in his official capacity as Board Chair of the Metropolitan Council of Governments; and MICHAEL KNAPP, sued in his official capacity as Chairperson of the National Capital Region Transportation Planning Board, have served notice pursuant to Federal Rule of Civil Procedure ("FRCP") 25(d)(1), that they no longer serve in those capacities and that their successors, VINCENT C. GRAY, Board Chair of the Metropolitan Council of Governments, and KATHERINE HUTCHINS, Chairperson of the National Capital Region Transportation Planning Board, are automatically substituted as parties.

# Table of Contents

Table of Contents..................................................................................................................... i

Table of Authorities .............................................................................................................. ii

Table of Acronyms ................................................................................................................ v

Introduction............................................................................................................................ 1

Factual Background ............................................................................................................... 2

Statutory and Regulatory Background.................................................................................. 3

   Responsibilities of the MPO ............................................................................................ 3

   Standard Under the APA .................................................................................................. 5

   Standard for a Motion to Dismiss ................................................................................... 6

Summary of Argument .......................................................................................................... 7

Argument ................................................................................................................................ 8

   I.     Judicial Review for the Claims in Counts 9-13 and 15 is Barred............................ 8

      A.   How the MPO Balances Broad Planning Goals is Not Subject to Review................ 8

      B.   Section 134 Does Not Provide a Private Cause of Action in Any Event.................. 11

      C.   No Enforceable Duties Arise Under the Aspirational Language of
          23 U.S.C. § 134(a) .................................................................................................. 14

      D.   Congress has Eliminated Any Duty to Prepare an MIS............................................ 15

   II.    The APA Does Not Apply to Moving Defendants (Count 15)................................ 19

   III.   Conformity Determinations for Regional Transportation Plans Precede Selection
        of Individual Projects (Count 37) ......................................................................... 20

Conclusion ............................................................................................................................ 27

## Table of Authorities

### Cases

*Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461 (2004)..................................... 6

* *Allandale Neighborhood Assoc. v. Austin Transp. Study Policy Advisory Committee*, 840 F.2d 258 (5th Cir. 1988)........................................................................................................ 12

*Birnberg v. Washington Metropolitan Area Transit Authority*, 389 F. Supp. 340 (D. D.C. 1975) ........................................................................................................................................ 20

*Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281 (4th Cir. 2004)..................................... 6

*Buckingham Twp. v. Wykle*, 157 F. Supp. 2d 457 (E.D. Pa. 2001)............................. 12, 15

*California v. Sierra Club*, 451 U.S. 287 (1981)................................................................ 13, 15

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................. 6

*Cort v. Ash*, 422 U.S. 66 (1975)....................................................................................... 13

*Entergy Ark., Inc. v. Nebraska*, 241 F.3d 979 (8th Cir. 2001)........................................ 14

*Envtl. Def. Fund v. Browner*, 1995 WL 91324 (N.D.Cal. Feb. 10, 1995)....................... 4

*Envtl. Def. Fund v. EPA*, 167 F.3d 641(D.C. Cir. 1999) ............................................. 3, 4

*Envtl. Def. Fund v. EPA*, 82 F.3d 451 (D.C. Cir. 1996) ............................................... 4

*Envtl. Def. v. EPA*, 467 F.3d 1329 (D.C. Cir. 2006)........................................................ 4

*Islamic American Relief Agency v. Gonzales*, -- F.3d --, 2007 WL 445936 (D.C. Cir. Feb. 13, 2007) .............................................................................................................................. 6

* *Jersey Heights Neighborhood Assoc. v. Glendening*, 174 F.3d 180 (4th Cir. 1999).................. 12

*Johnson v. Rodriguez*, 943 F.2d 104 (1st Cir. 1991) ....................................................... 19

*Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489(D. Md. 2002)............................ 6

* *Lundeen v. Mineta*, 291 F.3d 300 (5th Cir. 2002)...................................................... 10, 12

*Mattes v. ABC Plastics, Inc.*, 323 F.3d 695 (8th Cir. 2003) ............................................ 14

*Municipality of Anchorage v. Alaska*, 393 F. Supp. 2d 958 (D. Ak. 2005).................... 12

*Nat. Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831 (D.C. Cir. 2006) ......................... 6

*Nat. Wildlife Fed. v. Gorsuch*, 693 F.2d 156 (D.C. Cir. 1982)....................................... 14

*Penhurst State Sch. and Hosp.l v. Halderman*, 451 U.S. 1 (1981) ................................ 14

*Quraishi v. Shalala*, 962 F. Supp. 55 (D. Md. 1997)....................................................... 6

*Resident Council Of Allen Parkway Village v. United States Dept. Of Hous. & Urban Dev.*, 980 F.2d 1043 (5th Cir. 1993) ......................................................................................... 20

*Rohnert Park v. Harris*, 601 F.2d 1040  (9th Cir. 1979) ................................................. 19

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ........................................................................ 6

*Sierra Club v. Pena*, 915 F. Supp.1381 (N.D Ohio 1996) .......................................... 12, 15

*Town of Seacaucus v. United States DOT*, 889 F.Supp. 779 (D.N.J. 1995)................. 12

*Transamerica Mor. Advisors v. Lewis*, 444 U.S. 11 (1979) .................................... 13, 14

### Statutes

16 U.S.C. § 470(f).............................................................................................................. 5

23 U.S.C. § 134................................................................................................... passim

23 U.S.C. § 134(a) .............................................................................................. passim

23 U.S.C. § 134(a)(2004)................................................................................................ 8

23 U.S.C. § 134(b)(1)(2004)......................................................................................... 13

23 U.S.C. § 134(c)....................................................................................... 2, 8, 11, 15

23 U.S.C. § 134(c)(1)...................................................................................................... 8

23 U.S.C. § 134(f)(1)(2004) ...................................................................................... 3, 9

23 U.S.C. § 134(h)(1) ...................................................................................................... 3

23 U.S.C. § 134(h)(1)(A) ............................................................................................ 10
23 U.S.C. § 134(h)(1)(B) .............................................................................................. 9
23 U.S.C. § 134(h)(1)(C) .............................................................................................. 9
23 U.S.C. § 134(h)(1)(D) ............................................................................................ 10
23 U.S.C. § 134(h)(1)(E) ............................................................................................. 11
\* 23 U.S.C. § 134(h)(2) ................................................................... 4, 10, 11, 13
23 U.S.C. § 134(i) ......................................................................................................... 9
23 U.S.C. § 134(i)(1) ..................................................................................................... 3
23 U.S.C. § 134(j) ...................................................................................................... 3, 9
23 U.S.C. § 134(j) ......................................................................................................... 9
23 U.S.C. § 134(j)(1)(D) ............................................................................................... 3
23 U.S.C. § 134(j)(2)(A) ............................................................................................... 3
23 U.S.C. § 134(j)(5)(A) ............................................................................................... 5
23 U.S.C. § 134(p) ........................................................................................................ 4
23 U.S.C. § 135 ........................................................................................................... 12
33 U.S.C. § 1344 ........................................................................................................... 5
42 U.S.C. § 6010 ......................................................................................................... 14
42 U.S.C. § 7506(c) ...................................................................................................... 7
42 U.S.C. § 7506(c)(1) ............................................................................................... 21
42 U.S.C. § 7506(c)(2)(C) .......................................................................................... 21
5 U.S.C. § 701(b)(1) ................................................................................................. 6, 19
5 U.S.C. § 706 ..................................................................................................... 1, 5, 6
Intermodal Surface Transportation Efficiency Act (P.L. 102-240 (1991)) .................................... 2
Safe, Accountable, Flexible, Efficient Transportation Act: A Legacy For Users (P.L. 109-59 (2005)) .......................................................................................................... 3
Transportation Equity Act for the 21st Century (P.L. 105-178 (1998)) ......................................... 3
Transportation Equity Act for the 21st Century (P.L. 105-178 (1998)), Section 1308 ............ 4, 16

## Rules

23 C.F.R. § 450.318(a) ............................................................................................... 1, 2
23 C.F.R. § 450.322(d) .................................................................................................. 5
23 C.F.R. § 450.322(d) ................................................................................................ 22
23 C.F.R. § 450.322(l) ................................................................................................... 5
23 C.F.R. § 450.324(a) .................................................................................................. 5
23 C.F.R. § 450.324(b) .................................................................................................. 5
23 C.F.R. § 450.330(b) ............................................................................................. 5, 22
40 C.F.R. § 93.101 ...................................................................................................... 22
40 C.F.R. § 93.109 ................................................................................................. 22, 25
40 C.F.R. § 93.109(a) .................................................................................................. 22
40 C.F.R. § 93.109(b) .................................................................................................. 22
40 C.F.R. § 93.109, Table 1 ........................................................................................ 22
40 C.F.R. § 93.113(b) ............................................................................................. 22, 23
40 C.F.R. § 93.113(c) ............................................................................................. 22, 24
40 C.F.R. § 93.115(a) .................................................................................................. 25
40 C.F.R. § 93.116 ...................................................................................................... 25
40 C.F.R. § 93.117 ...................................................................................................... 25
40 C.F.R. § 93.118 ...................................................................................................... 22
40 C.F.R. § 93.119 ...................................................................................................... 23
40 C.F.R. § 93.150(a) .................................................................................................. 21

40 C.F.R. §§ 93.100, *et. seq* .................................................................................... 22

40 C.F.R. §§ 93.114-93.117 ..................................................................................... 5

**Federal Register Notices**

58 FED. REG. 62188 (Nov. 24, 1993) ......................................................................... 22

65 FED. REG. 33922 (May 25, 2000) ......................................................................... 17

67 FED. REG. 59219 (Sept. 20, 2002) ........................................................................ 17

71 FED. REG. 33510 (June 9, 2006) ...................................................................... 16, 17

72 FED. REG. 12467 (Mar. 10, 2006 .......................................................................... 26

\* 72 FED. REG. 7224 (Feb. 14, 2007) ................................................................. 4, 10, 16

**Other Authorities**

FHWA & FTA, Integration of Planning and NEPA Processes (Feb. 22, 2005) ............................ 18

FHWA, TEA-21 Environmental Streamlining Fact Sheet (Sept. 14, 1998) ................................. 17

FHWA, Transportation Conformity: A Basic Guide for State and Local Officials ..................... 22

FHWA, Transportation Issues (Mar. 14, 2002) ............................................................. 18

\* Cases or authorities on which counsel chiefly relies, as per Local Civil Rule 7(a).

**Table of Acronyms**

APA - Administrative Procedures Act

CAA  - Clean Air Act

CLRP - Constrained Long-Range Plan

COG - Metropolitan Washington Council of Governments

DOT - U.S. Department of Transportation

EPA - Environmental Protection Agency

FAHA - Federal Aid to Highways Act

FHWA - Federal Highway Administration

FTA  - Federal Transit Administration

HUD  - Housing and Urban Development

ICC - Maryland Intercounty Connector

ISTEA - Intermodal Surface Transportation Efficiency Act

MIS - Major Investment Study

Moving Defendants  - COG, TPB, Vincent C. Gray, in his official capacity as Board Chairman of COG, and Katherine Hutchins, in her official capacity as Chairperson of TPB

MPO  - Metropolitan Planning Organization

NEPA - National Environmental Policy Act

Plaintiffs - Plaintiffs Environmental Defense and Sierra Club, Inc.

SAFETEA-LU - Safe, Accountable, Flexible, Efficient Transportation Act: A Legacy For Users

SIP - State Implementation Plan

TEA-21 - Transportation Equity Act for the 21st Century

TIP - Transportation Improvement Program

TPB - Transportation Planning Board for the Washington Metropolitan Region

## Introduction

Plaintiffs Environmental Defense and Sierra Club, Inc. ("Plaintiffs") have filed a 105-page, 592-paragraph Complaint ("Complaint") setting forth 37 separate claims in their effort to stop construction of the Maryland Intercounty Connector ("ICC").  While most of Plaintiffs' lengthy Complaint concerns actions of the Federal Highway Administration ("FHWA") in relation to the ICC, they have set forth seven counts with claims against the Metropolitan Washington Council of Governments ("COG"), the Transportation Planning Board for the Washington Metropolitan Region ("TPB"), Vincent C. Gray, in his official capacity as Board Chairman of the Metropolitan Washington Council of Governments, and  Katherine Hutchins, in her official capacity as Chairperson of the National Capital Region Transportation Planning Board (collectively "Moving Defendants").  The seven claims against Moving Defendants are without foundation in law and should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).[2]  The claims against the Moving Defendants fail for five fundamental reasons: 1) the claims under 23 U.S.C. § 134 are specifically barred from judicial review (Counts 9 to 12 and 15); 2) there is no private cause of action under 23 U.S.C. § 134 for the claims asserted in Counts 9 to 13; 3) no major investment study ("MIS") is required under 23 C.F.R. § 450.318(a) (Count 13); 4) the Moving Defendants are not federal agencies subject to claims under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (Count 15); and 5) project-specific conformity determinations under the Clean Air Act ("CAA") are mandated to occur after approval of the Transportation Improvement Program ("TIP") and Constrained Long-Range Plan ("CLRP") (Count 37).

---

[2]  By making this Motion, Moving Defendants do not waive any other defenses they have to the allegations of the Complaint.

**Factual Background**

For purposes of this motion, the facts alleged in the Complaint are to be taken as true.[3] The TPB is the Metropolitan Planning Organization ("MPO") for the Washington Metropolitan Region. Complaint ¶ 29. The COG is a regional organization of Washington area local governments. Complaint ¶ 27. Moving Defendants approved, in 2004 and 2005, CLRPs and TIPs, transportation planning documents which included, among other transportation projects, the ICC project. Complaint ¶¶ 1, 48, and 67.

Plaintiffs allege that the Moving Defendants violated federal law because the approved TIPs and CLRPs:

    (1) "fail to accomplish [four discrete] national transportation objective[s] required by 23 U.S.C. § 134(a), (c)." Complaint Counts 9-12, ¶¶ 340-51;

    (2) were adopted without the undertaking of a MIS required under 23 C.F.R. § 450.318(a). Complaint Count 13, ¶¶ 352-54;

    (3) were arbitrarily and capriciously approved in violation of the APA, 5 U.S.C. § 706. Complaint Count 15, ¶ 360;[4] and,

    (4) were adopted "before the project had been found to conform under the Clean Air Act" Complaint Count 37, ¶¶ 585-87.

These are the only counts Plaintiffs have brought against Moving Defendants.[5]

---

[3] As a result, Moving Defendants have not attempted to correct the many erroneous factual assertions presented in the Complaint. This silence is not intended, nor should it be viewed, as an admission of any of these facts.

[4] Plaintiffs' specific allegation is that the failures alleged in "Counts 9-14 make [Moving Defendants'] approval of the Metropolitan TIPs and CLR Plans arbitrary and capricious or otherwise not in accordance with law." Complaint ¶ 360. The reference to Count 14 in this sentence is erroneous, as none of the allegations in Count 14 relate to actions undertaken by any of Moving Defendants. Therefore, no attempt has been made in this Motion to refute the allegations contained in Paragraph 14. It is also notable that Count 15 does not make a claim for relief against Moving Defendants, instead asking that federal approval of the ICC project and Federal approval of the State TIP be set aside as a result of this alleged failure. Complaint ¶¶ 361, 362. Nevertheless, out of an abundance of caution, the instant Motion encompasses the allegations of ¶ 360 and Count 15.

[5] Although Plaintiffs refer to 23 U.S.C. § 134 as a "SAFETEA-LU" provision (see, e.g., Complaint ¶¶ 333-37), SAFETEA-LU does not govern all of the TPB's decisions that Plaintiffs have challenged. The Federal Aid to Highways Act ("FAHA") has been amended several times in recent years. These amendments include a 1991 act known as the Intermodal Surface Transportation Efficiency Act ("ISTEA") (P.L. 102-240)), 1998 amendments, known as the Transportation Equity Act for the 21st

## Statutory and Regulatory Background

Responsibilities of the MPO

As the MPO for the Washington, D.C. metropolitan region, TPB carries out certain transportation planning functions in accordance with standards established by federal statutes. Congress has linked availability of certain federal benefits to completion of transportation planning at a regional level. MPOs perform transportation planning and other functions for metropolitan areas with populations greater than 50,000 individuals. 23 U.S.C. § 134.

The two primary products reflecting MPO planning are the TIP and the CLRP. A TIP is a short-term planning tool, covering a minimum of a four year planning horizon, 23 U.S.C. § 134(j)(2)(A), and setting forth a metropolitan region's short-term transportation priorities. 23 U.S.C. § 134(j).[6] In contrast, a CLRP is a long-term planning tool which "specifies the facilities, services, financing techniques, and management policies that will comprise the area's transportation system over a 20-year period." *Envtl. Def. Fund v. EPA*, 167 F.3d 641, 644 (D.C. Cir. 1999). Both TIPs and CLRPs must be updated at least every four years, 23 U.S.C. §§ 134(i)(1) and (j)(1)(D), although MPOs may amend or update them more frequently. The TPB has a practice of updating the Washington region's TIP and CLRP annually.

As is pertinent to Plaintiffs' claims in this action, MPOs must consider and weigh seven broad factors in developing their transportation plans, including economics, safety, security,

---

Century ("TEA-21") (P.L. 105-178 (1998)), and 2005 amendments known as the Safe, Accountable, Flexible, Efficient Transportation Act: A Legacy For Users ("SAFETEA-LU") (P.L. 109-59 (2005)). SAFETEA-LU was not signed into law until August 10, 2005, 2005 U.S.C.C.A.N. S24, S25, and the Complaint alleges errors based on the adoption of the CLRP and TIP on November 17, 2004. Complaint ¶¶ 48, 59. For the purposes of this Motion, this distinction is largely irrelevant, since, for the provisions at issue, SAFETEA-LU and TEA-21 are structurally and procedurally similar. For the Court's convenience, where relevant, Moving Defendants will indicate whether these various amendments changed relevant provisions of the law. For example where the same provisions appear in both SAFETEA-LU and TEA-21 but with different citations, both citations are provided. Here, SAFETEA-LU Section 134(h)(1) (2006) corresponds with TEA-21 Section 134(f)(1)(2004).

[6] For a portion of the time at issue in the complaint, TIPs covered a two-year cycle, not four years. *See, e.g.*, 23 C.F.R. § 450.324(b)(2005). The timing was modified under SAFETEA-LU.

mobility, environment, connectivity and efficiency. *Id*. at § 134(h)(1).[7]  Congress has expressly

prohibited judicial review of the MPO's consideration of these broad policy factors. *Id*. at §

134(h)(2).  Congress also insulated MPO planning from the requirements of the National

Environmental Policy Act ("NEPA"). *Id*. at § 134(p)**.**  For a period of time, between 1993 and

1998, federal law provided for development of a corridor level study under certain

circumstances, known as an MIS.  In 1998, Congress directed that the previously existing MIS

requirement be abolished.  TEA-21 (P.L. 105-178 (1998)), Section 1308.  Current federal

regulations do not require preparation of an MIS.  72 FED. REG. 7224, 7241 (Feb. 14, 2007).

The MPO also performs Clean Air Act ("CAA") conformity determinations, to determine

whether, assuming implementation of the projects in the TIP and CLRP, the region will meet

applicable air quality standards.  These conformity determinations involve assuring that the TIP

and CLRP will keep the region in compliance with State Implementation Plans ("SIPs")

developed under the CAA. *See Envtl. Def. Fund*, 167 F.3d at 644.[8]  These SIPs implement clean

air standards and set forth strategies for the state to comply with various CAA emission limits.

Prior to approving a TIP or CLRP, an MPO must determine that the emissions which would

occur under the projects in those plans would "conform" with the SIP.  23 C.F.R. §§ 450.322(d)

---

[7] Section 134(h)(1) is set forth in full at page 9.

[8] The metropolitan transportation planning process and the conformity obligations for transportation plans have been described in a number of  court decisions. *See, e.g., Envtl. Def. v. EPA*, 467 F.3d 1329 (D.C. Cir. 2006); *Envtl. Def. Fund*, 167 F.3d at 641; *Envtl. Def. Fund v. Environmental Protection Agency*, 82 F.3d 451 (D.C. Cir. 1996); *Envtl. Def. Fund v. Browner*, 1995 WL 91324 (N.D.Cal. Feb. 10, 1995).

and 450.324(b).[9]  This "conformity" determination for the TIP and CLRP must be confirmed by

FHWA and the Federal Transit Administration ("FTA").  *Id*. at §§ 450.330(b) and 450.322(d).[10]

In contrast to MPO regional planning, selection and construction of specific

transportation projects, like the ICC, follows a separate path.  Specific highway projects

proposed for federal funding must be included in the TIP.  23 U.S.C. §§ 134(j)(5)(A) .  Project

are generally designed, built and operated by state or local transportation departments.  If there is

federal involvement in the project (e.g., federal funding, approval or permitting), the project

itself is then reviewed by those federal agencies according to the relevant federal legal

requirements, such as NEPA, Clean Water Act § 404, National Historic Protection Act § 106 (16

U.S.C. § 470(f)), and the CAA.

Under the CAA, at the time of approval of any particular project, a conformity

determination must be made for that project.  40 C.F.R. §§ 93.114-93.117.  The project-level

conformity determination requires first that the project must come from a conforming

transportation plan, and, second, in certain circumstances, additional assessment of the air

emissions impacts of the project alone. *See* pp. 20-27 below.  Following completion of all project

level authorizations by the federal agencies, and state or local agency, the project may be

constructed.

Standard Under the APA

Under the APA, 5 U.S.C. § 706, *et. seq.*, a court may set aside federal agency action if it

is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

---

[9] These citations are to the regulations that were in effect at the time of the actions at issue.  As discussed more fully below in Section I.D., on Feb. 14, 2007, the U.S. Department of Transportation ("DOT") amended these regulations, which altered some of these citations.  These changes are effective on Mar. 16, 2007.  For the Court's convenience, the new citation will be provided where different.  Here, the provisions of the former 23 C.F.R. § 450.324(b) are now found in 450.324(a) ; those in 450.322(d) are now in 450.322(l).

[10] The provisions of the former 23 C.F.R. § 450.330(b) are now found in 450.324(a); those in 450.322(d) are now in 450.322(l).

5 U.S.C. § 706; *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496-97 (2004).

Agency decisions are given significant deference under this standard. *Nat. Fuel Gas Supply Corp., v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006) ("An agency's 'policy decisions are entitled to deference so long as they are reasonably explained.'"); *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 291 (4th Cir. 2004) ("Determining whether an agency action is arbitrary and capricious is subject to a highly deferential standard of review that presumes the validity of the agency action."). The APA only applies to "authorit[ies] of the Government of the United States." 5 U.S.C. § 701(b)(1).

Standard for a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) should be granted if the Plaintiffs cannot allege facts that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This Court must accept the facts alleged in the Complaint as true, and view the allegations in the light most favorable to Plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, a court is not required to accept "conclusory factual allegations devoid of any reference to actual events." *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 494 (D. Md. 2002). A motion to dismiss also should be granted "if there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Quraishi v. Shalala*, 962 F. Supp. 55, 57 (D. Md. 1997) (quotations omitted). *See also Islamic American Relief Agency v. Gonzales*, -- F.3d --, 2007 WL 445936, *2 (D.C. Cir. Feb. 13, 2007) ("This Court need not, however, accept inferences that are unsupported by the facts set out in the complaint, nor will it accept legal conclusions cast in the form of factual allegations.")

**Summary of Argument**

Even taking Plaintiffs' allegations as true, the claims against Moving Defendants should be dismissed. Counts 9-13 under 23 U.S.C. § 134 fail for several reasons. First, Congress explicitly precluded from judicial review the MPO's balancing of the factors and transportation policies enumerated under Section 134 and recited in Counts 9-12. Plaintiffs cannot avoid the bar on judicial review by invoking Section 134(a) rather than 134(h), since only 134(h) imposes any direct obligations on the MPO. Second, even without the express bar on judicial review, FAHA does not provide a private right of action, and the aspirational, precatory provisions of Section 134 relied upon by Plaintiffs do not support the Court finding an implied private cause of action.

Plaintiffs' Count 13 must be dismissed because Congress has eliminated the MIS requirement that Plaintiffs seek to enforce. Moving Defendants had no enforceable obligation to prepare an MIS during the relevant time period and no such requirement currently exists. Count 15 is a summation of allegations, in which Plaintiffs allege that the violations set forth in Counts 9-13 are separately enforceable as "arbitrary and capricious" under the APA. Count 15 must also be dismissed because Counts 9-13 have no merit and because the APA expressly does not apply to Moving Defendants.

Count 37 fails to state a claim since Moving Defendants were not required to conduct or await a conformity determination for the ICC project before approving TIPs and CLRPs. The law offers no support for Plaintiffs' claim that the project-level conformity determination must come before CLRP and TIP approval. Under CAA § 176(c), 42 U.S.C. § 7506(c), and governing regulations, the MPO conducts conformity assessments of its *plans*, not of specific projects. Plans are reviewed and approved first, then specific projects are derived from approved plans.

Each of the seven counts brought against Moving Defendants should be dismissed with

prejudice and Moving Defendants should be dismissed from this action.

## Argument

## I.    Judicial Review for the Claims in Counts 9-13 and 15 is Barred

### A.    How the MPO Balances Broad Planning Goals is Not Subject to Review

Plaintiffs cite section 23 U.S.C. § 134(a) and (c) in support of their claims that the TPB

did not properly consider certain factors when it approved the CLRP and TIP in 2004 and 2005.

In fact, the statutory sections cited by Plaintiffs impose no duties on the TPB.  Subpart (a) of

Section 134 sets out broad, general objectives for planning.[11]  23 U.S.C. § 134(a).  Subpart (c) of

Section 134 states that the MPO should meet the broad 134(a) objectives through the

development of CLRPs and TIPs.[12]  The development of those CLRPs and TIPs is governed,

---

[11] Sec. 134(a) lays out findings and goals for metropolitan planning:

(a) POLICY.—It is in the national interest to.—
    (1) encourage and promote the safe and efficient management, operation, and
development of surface transportation systems that will serve the mobility needs of
people and freight and foster economic growth and development within and between
States and urbanized areas, while minimizing transportation-related fuel consumption
and air pollution through metropolitan and statewide transportation planning
processes identified in this chapter; and
(2) encourage the continued improvement and evolution of the metropolitan and
statewide transportation planning processes by metropolitan planning organizations,
State departments of transportation, and public transit operators as guided by the
planning factors identified in subsection (h) and section 135(d).

23 U.S.C. § 134(a).  The language under TEA-21 was similar:

    (1) Findings. - It is in the national interest to encourage and promote the safe and
efficient management, operation, and development of surface transportation systems
that will serve the mobility needs of people and freight and foster economic growth
and development within and through urbanized areas, while minimizing
transportation-related fuel consumption and air pollution.

23 U.S.C. § 134(a)(2004).
[12] Section 134(c) provides, in relevant part, that "[t]o accomplish the objectives in subsection (a),
metropolitan planning organizations . . . shall develop long-range transportation plans and transportation
improvement programs[.]"  23 U.S.C. § 134(c)(1).  The equivalent provision under TEA-21 was found at
then Section 134(a)(2)(2004).

among other things, by the specific provisions of Section 134(i) and (j).[13]  In particular, Section

134(h) addresses the range of goals for planning which need to be considered and balanced by

MPOs.  In Section 134(h), Congress has explicitly barred judicial review of the application of

those factors.

Section 134(h) sets out important and sometimes contradictory public policies that mirror

the precatory planning goals stated in Section 134(a):

> (1)  IN  GENERAL.—The  metropolitan  planning  process  for  a
> metropolitan  planning  area  under  this  section  shall  provide  for
> consideration of projects and strategies that will—
>> (A)  support  the  economic  vitality  of  the  metropolitan  area,
>> especially  by  enabling  global  competitiveness,  productivity,  and
>> efficiency;
>> (B) increase the safety of the transportation system for motorized
>> and nonmotorized users;
>> (C)  increase  the  security  of  the  transportation  system  for
>> motorized and nonmotorized users;
>> (D)  increase  the  accessibility  and  mobility  of  people  and  for
>> freight;
>> (E)  protect  and  enhance  the  environment,  promote  energy
>> conservation, improve the quality of life, and promote consistency
>> between  transportation  improvements  and  State  and  local  planned
>> growth and economic development patterns;
>> (F) enhance the integration and connectivity of the transportation
>> system, across and between modes, for people and freight;
>> (G) promote efficient system management and operation; and
>> (H)  emphasize  the  preservation  of  the  existing  transportation
>> system.

23 U.S.C. § 134(h)(1).[14]

The section further provides: "[t]he failure to consider any factor specified in paragraph

(1) shall not be reviewable by any court under this title or chapter 53 of title 49, subchapter II of

chapter 5 of title 5 [The APA], or chapter 7 of title 5 in any matter affecting a transportation

---

[13] Section 134(i) provides requirements for development of long range plans (the CLRP) while Section
134(j) addresses requirements for transportation improvement plans (the TIP).  Plaintiffs do not invoke
any provisions of these provisions likely because the text therein is unrelated to any of their allegations.
[14] The equivalent provision under TEA-21 was Section 134(f)(1)(2004); it contained essentially the same
text, combining the "safety and security" provisions of 134(h)(1)(B) and (C) into one subpart and did not
contain the text in section 134(h)(1)(E) that appears after the phrase "quality of life."

plan, a TIP, a project or strategy, or the certification of a planning process." 23 U.S.C.

§ 134(h)(2). *See also* 72 Fed. Reg. at 7270 (to be codified at 23 C.F.R. § 450.306). Perhaps

recognizing the inherently political nature of the balancing and consideration of these kinds of

factors, Congress precluded any judicial review based on such factors.[15] As stated by the Fifth

Circuit, "Section[] 134 . . . delineate[s] the scope of planning and provide[s] a list of planning

factors, several of which are relevant to this case; but they also protect that planning, and the

planners' failure to consider a factor, from judicial review." *Lundeen v. Mineta,* 291 F.3d 300,

305 (5th Cir. 2002)

It is clear that even though Plaintiffs did not cite Section 134(h), their allegations seek to

enforce against the Moving Defendants the responsibilities created only under that subsection.

Comparison of the alleged failures identified by Plaintiffs[16] with Section 134(h) confirms that

they are seeking to enforce actions taken under that subsection:

1.  Count 9 alleges Moving Defendants failed to consider "meeting the mobility needs of

    people and freight." Complaint ¶ 340. This is identical to the language of 23 U.S.C.

    § 134(h)(1)(D), which requires consideration of projects and strategies that will "increase

    the accessibility and mobility of people and for freight."

2.  Count 10 alleges Moving Defendants failed to consider "fostering economic growth and

    development within and between urbanized areas." Complaint ¶¶ 343-44. This is

    essentially the same as the language of 23 U.S.C. § 134(h)(1)(A), which requires

    consideration of projects and strategies that will "support the economic vitality of the

---

[15] Preclusion of judicial review of how an MPO considers the seven planning goals is consistent with the policy behind Congress's assurance that the planning process is not subject to the National Environmental Policy Act, 23 U.S.C. 134(p) ;72 Fed. Reg. at 7280 (to be codified at 23 C.F.R. § 450.336).

[16] In each of these counts, Plaintiffs have identified certain specific documents (e.g., 1998 TPB Vision Plan) that they allege should have been considered by the TPB. Proof concerning these allegations is irrelevant to this Motion to Dismiss. Put simply, regardless of the record of what and how TPB considered the Section 134(h) factors, judicial review is precluded.

metropolitan area, especially by enabling global competitiveness, productivity and efficiency."

3.  Count 11 alleges Moving Defendants failed to consider "minimizing transportation-related fuel consumption." Complaint ¶ 346. This is essentially the same as the language of 23 U.S.C. § 134(h)(1)(E), which requires consideration of projects and strategies that will "promote energy conservation."

4.  Count 12 alleges Moving Defendants failed to consider "minimizing air pollution." Complaint ¶ 350. This is encompassed within the language of 23 U.S.C. § 134(h)(1)(E), which requires consideration of projects and strategies that will "protect and enhance the environment."

Since the claims in Counts 9 through 12 seek to enforce the same obligations as contained in Section 134(h)(1), they are precluded from judicial review under Section 134(h)(2). As that bar on judicial review specifically references the APA, Count 15 must be dismissed to the extent it relies on the allegations of Counts 9-12.

**B.    Section 134 Does Not Provide a Private Cause of Action in Any Event**

Assuming that Plaintiffs could avoid the judicial review bar of Section 134(h) by relying on Section 134(a) or (c), their claims nonetheless should be dismissed on well established precedent. FAHA Section 134 does not provide an express private cause of action. Numerous courts have found there is no implied private right of action to enforce Section 134.

In *Allandale Neighborhood Assoc. v. Austin Transp. Study Policy Advisory Committee*, "Plaintiffs contend[ed] that the defendant Austin Transportation Study Policy Advisory Committee of Austin, Texas, a planning group at the local level, violated federal statutes codified at 23 U.S.C. § 134 . . . chiefly by failing to give due consideration to social, economic, and environmental goals when the Committee devised and endorsed an overarching transportation

11

plan." 840 F.2d 258, 259 (5th Cir. 1988).  This analogous case was decided before Congress

imposed the bar on judicial review now in Section 134(h).  Yet the court had no difficulty

concluding that no private right of action existed under Section 134 to enforce these kinds of

duties.  *Id.* at 265-67.  The Fifth Circuit reiterated this conclusion in 2002.  *Lundeen*, 291 F.3d at

312.  The Fourth Circuit has reached the same conclusion.  *Jersey Heights Neighborhood Assoc.*

*v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999)  ("[N]either FAHA nor NEPA itself provides

[sic] a private cause of action.").  *See also Municipality of Anchorage v. Alaska*, 393 F. Supp. 2d

958, 961 (D. Ak. 2005) (holding that "the Municipality has not shown that Congress intended to

provide it a private cause of action in federal court to enforce its rights under 23 U.S.C. § 134

and its implementing regulations."); *Sierra Club v. Pena*, 915 F. Supp.1381, 1389, 1391 (N.D

Ohio 1996) , *aff'd, Sierra Club v. Slater*, 120 F.3d 623 (6th Cir. 1997) (dismissing a claim under

Section 134 that "Defendants failed to prepare a major investment study" on the basis that "no

private right of action exists under ISTEA."); *Buckingham Twp. v. Wykle*, 157 F. Supp. 2d 457,

461, 465, 468 (E.D. Pa. 2001) (dismissing claims under 23 U.S.C. §§ 134 and 135, including

those related to the adequacy of a Major Investment Study, because the "amendments in the

Intermodal Surface Transportation Efficiency Act ('ISTEA') . . . do not authorize a private right

of action."); *Town of Seacaucus v. United States DOT*, 889 F.Supp. 779, 786-88) (D.N.J. 1995)

("[N]o express or implied private right of action exists under" ISTEA.).

    *Cort v. Ash* provides the basic criteria for assessing whether a statute creates a private

right of action:

> In determining whether a private remedy is implicit in a statute not expressly
> providing one, several factors are relevant. First, is the plaintiff "one of the class
> for whose especial benefit the statute was enacted," – that is, does the statute
> create a federal right in favor of the plaintiff?  Second, is there any indication of
> legislative intent, explicit or implicit, either to create such a remedy or to deny
> one?  Third, is it consistent with the underlying purposes of the legislative scheme
> to imply such a remedy for the plaintiff?  And finally, is the cause of action one
> traditionally relegated to state law, in an area basically the concern of the States,

so that it would be inappropriate to infer a cause of action based solely on federal
law?

422 U.S. 66, 78 (1975). Using these factors, "what must ultimately be determined is whether

Congress intended to create the private remedy asserted." *Transamerica Mort. Advisors v.*

*Lewis*, 444 U.S. 11, 15 (1979). As a result, the judiciary should focus on the first two factors

discussed in *Cort*. *See California* v. *Sierra Club*, 451 U.S. 287, 297 (1981).

If there was any remaining question, as to the first *Cort* factor, there is no indication that

Congress intended by enacting Section 134 to benefit any specific class of individuals. To the

contrary, the provision sets out broad, wide-ranging planning goals, which benefit the general

public at large. The section does not even apply to areas with populations of fewer than 50,000

individuals. 23 U.S.C. § 134(b)(1)(2004). In examining this factor, the *Allandale* court stated

that "[p]laintiffs have not demonstrated that Congress, when enacting 23 U.S.C. § 134 . . .

singled out for special concern or favor from all the direct or indirect beneficiaries of these

sections those individuals and businesses in close proximity to the site of a proposal in the

transportation plan." *Allandale*, 840 F.2d at 265.

Plaintiffs also cannot meet the second *Cort* factor. The legislative intent is clear that

Congress did not desire private enforcement against an MPO for compliance with Section 134.

Congress established specific factors to be considered by MPOs during metropolitan planning

and barred judicial review of the evaluation and application of those factors. 23 U.S.C.

§ 134(h)(1) and (2).[17] Thus, Congress' intent was to prevent these matters from being reviewed,

not only in any possible private action under the Transportation Act, but under any Act at all

(such as the Administrative Procedures Act, subchapter 5 of Title 5). *Id.*

As the first two *Cort* factors are dispositive, there is no reason to examine the remaining

two factors. Plaintiffs have no private cause of action under 23 U.S.C. § 134 and therefore, on

---

[17] In TEA-21, identical provisions appear at 23 U.S.C. §§ 134(f)(1) and (2)(2004).

grounds independent of the statutory bar under Section 134(h), their claims under Section 134 –

Counts 9 through 13 and 15 – should be dismissed.

### C.    No Enforceable Duties Arise Under the Aspirational Language of 23 U.S.C. § 134(a)

Even if there was a private right of action under 23 U.S.C. § 134, no claims could be

brought under the aspirational language of 23 U.S.C. § 134(a).  Such provisions impose no duties

subject to enforcement.  "[T]o give rise to [an] enforceable right[,] statutory language must be

mandatory, not precatory."  *Mattes v. ABC Plastics, Inc*., 323 F.3d 695, 699 (8th Cir. 2003),

*citing*, *Entergy Ark., Inc. v. Nebraska*, 241 F.3d 979, 989 (8th Cir. 2001), *cert denied*, 534 U.S.

889 (2001).  *See also Penhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 19 (1981)

(concluding that 42 U.S.C. § 6010 does not create any substantive rights, reasoning that "[w]e

are persuaded that § 6010, when read in the context of more specific provisions of the Act, does

no more than express a congressional preference for certain kinds of treatment.  It is simply a

general statement of 'findings' and, as such, is too thin a reed to support the rights and

obligations read into it by the court below."); *Nat. Wildlife Fed. v. Gorsuch*, 693 F.2d 156, 178

(D.C. Cir. 1982) (noting that "Congress's strong statement of its objective [in the Clean Water

Act] must color EPA's and our interpretation of the Act" but that "[a]s for the interim goal of

fishable and swimmable water, the purposes section does not tell us how that goal is to be

achieved.").

In determining whether a particular statutory provision gives rise to substantive rights,

the court "must not be guided by a single sentence or member of a sentence, but look to the

provisions of the whole law, and to its object and policy." *Penhurst State School*, 451 U.S. at 18

(quotations omitted).  "The question whether a statute creates a cause of action, either expressly

or by implication, is basically a matter of statutory construction."  *Transamerica Mortgage

Advisors*, 444 U.S. at 15. "The federal judiciary will not engraft a remedy on a statute, no matter

how salutary, that Congress did not intend to provide." *Sierra Club*, 451 U.S. at 297. Thus, unless a federal statutory provision explicitly provides that private parties can sue for the violation of an act, or such a right of action can be implied, no private remedy exists. *See*, *e.g.*, *id. at* 289-90 ("Since the Act does not explicitly create a private enforcement mechanism, the initial question presented . . . is whether such a private right of action can be implied on behalf of those allegedly injured by a claimed violation[.]").

Here, the language of 23 U.S.C. § 134(a), setting forth broad policies, findings and objectives, imposes no substantive duties. Indeed, Section 134(c) specifically states that those objectives are to be accomplished through the adoption of TIPs and CLRPs. Therefore, no claim can be brought based on the Moving Defendants' alleged violations of 23 U.S.C. § 134(a), and Counts 9-13 (and the corresponding portion of Count 15) must be dismissed.

### D.    Congress has Eliminated Any Duty to Prepare an MIS

In Count 13 (and indirectly in Count 15), Plaintiffs allege that Moving Defendants were required to prepare a MIS. To the extent that an MIS was ever required, the obligation to do such a study was eliminated in 1998.[18]

TEA-21, enacted in 1998, states:

The Secretary shall eliminate the major investment study set forth in section

---

[18] For the same reasons addressed in section B above, there was no private cause of action to enforce the MIS requirement even when it was in effect. The MIS had its genesis in 23 U.S.C. § 134. The regulation relied on by Plaintiffs, 23 C.F.R. § 450.318, was promulgated by FHWA and FTA to implement the mandates of ISTEA under Section 134. *See* 58 FED. REG. 12064, 12064, 12066 (Mar. 2, 1993) (proposed rule); 58 FED. REG. 58040, 58040, 58055 (Oct. 28, 1993) (final rule). Section 134 allows no express private right of action. There is no indication that Congress intended to benefit any specific class of individuals in enacting the planning provisions that were implemented by FHWA through the MIS requirement. *Buckingham Township v. Wykle*, 157 F. Supp. 2d 457, 461, 465, 468 (E.D. Pa. 2001), *Sierra Club v. Pena*, 915 F.Supp.1381, 1389, 1391 (N.D Ohio 1996), *aff'd Sierra Club v. Slater*, 120 F.3d 623 (6th Cir. 1997) so held, dismissing MIS claims on the basis that no private right of action existed, and the analysis in *Municipality of Anchorage*, *Cort* and other cases discussed above applies equally to the MIS requirement. Where the statute itself supports no express or implied right of action, claims may be brought against federal agencies under the APA. Plaintiff has invoked the APA in Count 15, Complaint ¶ 360, but Count 13 is based directly on Section 134, not on the APA. And as addressed more fully below, suit against Moving Defendants does not lie under the APA.

450.318 of title 23, Code of Federal Regulations, as a separate requirement, and promulgate regulations to integrate such requirement, as appropriate, as part of the analyses required to be undertaken pursuant to the planning provisions of title 23, United States Code, and chapter 53 of title 49, United States Code, and the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) for Federal-aid highway and transit projects. The scope of the applicability of such regulations shall be no broader than the scope of such section.

P.L. 105-178, Section 1308.

On February 14, 2007, FHWA and FTA (collectively, "DOT") finalized long awaited revisions to the planning regulations. Among other things, these rules codify Section 1308 of TEA-21 by explicitly making the MIS optional. *See* 23 C.F.R. § 450.318; 72 FED. REG. at 7274. The revised rule now states that:

Pursuant to section 1308 of the Transportation Equity Act for the 21st Century, TEA–21 (Pub. L. 105–178), an MPO(s), State(s), or public transportation operator(s) <u>may</u> undertake a multimodal, systems-level corridor or subarea planning study as part of the metropolitan transportation planning process.

72 FED. REG. at 7274 (Feb. 14, 2007) (to be codified at 23 C.F.R. § 450.318(a)) (emphasis added). *See also* 72 FED. REG. at 7241 (preamble to final rule, explaining the change).

While it took DOT some time to formally eliminate the MIS requirement from its regulations, since TEA-21 in 1998, DOT has implemented congressional intent by not enforcing its out-of-date MIS regulation. Shortly after TEA-21, DOT offered guidance stating that the MIS requirement was no longer applicable, and DOT has consistently maintained that position.[19] For example, immediately after the enactment of TEA-21, FHWA issued several fact sheets concerning the impact of the new law on various aspects of the DOT regulatory program. In the September 14, 1998 "Environmental Streamlining" Fact Sheet, FHWA noted that "[t]he major investment study *is no longer a separate requirement*, but must be integrated, as appropriate, as part of the analyses required to be undertaken pursuant to the agency's planning provisions and

---

[19] Much of this guidance is summarized in the 2006 proposed rulemaking which led to the February 14, 2007 final rule. *See* 71 FED. REG. 33510, 33511 (June 9, 2006).

NEPA." FHWA, TEA-21 Environmental Streamlining Fact Sheet (Sept. 14, 1998), *available at www.fhwa.dot.gov/tea21/factsheets/ envstr.htm* (emphasis added).

On May 25, 2000, FHWA and FTA proposed a rulemaking which, among other things, would have expressly deleted the MIS requirement from the C.F.R. 65 FED. REG. 33922, 33935-36 (May 25, 2000).[20] When the agencies determined in 2002 to not finalize those proposed regulations, they clarified again that the although the MIS requirement remained "on the books," the regulations would be applied in an "appropriately flexible" manner.[21]

When DOT released its most recently proposed planning regulations on June 9, 2006, it explained this same position:

> On February 2, 2001, the FHWA and the FTA jointly issued ''Implementing TEA–21 Planning Provisions,''[22] which provided information on how to proceed with the TEA–21 statutory planning requirements, noting that "*Although new planning regulations have not been issued, the requirements in TEA–21 are in effect.*" Under this guidance, the FHWA and the FTA field offices were to work with MPOs, State DOTs, and transit operators ''to ensure a basic level of compliance with TEA–21 planning requirements, based on the statutory language." The guidance focused on the following new TEA–21 requirements . . . (e) MIS integration[.]

71 FED. REG. at 33511 (emphasis added).

---

[20] For a variety of reasons, DOT proposed but did not finalize certain changes to its planning regulations during the years after TEA-21. This proposed rule was withdrawn before finalization. *See* 67 FED. REG. 59219 (Sept. 20, 2002).

[21] The MIS provision was explained as follows:

> The clear intent of section 1308 of the TEA-21 was to direct the Secretary to eliminate and propose an alternative to the separate major investment study (MIS) requirement. The technical structure of the law is such that this action requires a two step process: (1) Eliminating and (2) proposing an approach for integrating what remains. In withdrawing portions of the NPRM, the FHWA and the FTA cannot complete both steps. Hence, the agencies see the current regulatory language as a place holder that can be utilized at the discretion of State and local agencies as they see the need until future action on a rule. Implementation of the provisions of this section by the FTA and the FHWA will be appropriately flexible.

67 FED. REG. at 59223.

[22] FHWA & FTA, Implementing Tea-21 Planning Provisions (Feb. 2, 2002), *available at http://www.fhwa.dot.gov/hep tea21mem.htm.*

Additional guidance was also published on FHWA's website.  In 2002, in response to a question inquiring whether "FHWA and FTA still require major investment studies," FHWA stated that "[t]he short answer . . . is no."[23]  Subsequently, on February 22, 2005, FHWA and FTA issued joint "Program Guidance on Linking the Transportation Planning and NEPA Processes."[24]  That guidance noted that:

> Corridor-level "Major Investment Studies" were for a time required under FTA and FHWA's planning regulations where a need for a major metropolitan transportation investment was identified and Federal funds were potentially involved. Major investment studies were intended to refine the system-wide transportation plan and lead to decisions on the design concept and scope of the project, in consultation with other interested agencies. In addition, they were intended to be used as input to EISs and EAs. 23 C.F.R. 450.318.  In Section 1308 of the Transportation Equity Act for the 21st Century, the Secretary was directed to eliminate the separate requirement for major investment studies and instead integrate it with the planning analyses required under the FTA and FHWA planning statutes "as part of the analyses required to be undertaken pursuant to the planning provisions of Title 23, United States Code and Chapter 53 of Title 49, United States Code, and the National Environmental Policy Act of 1959 (42 U.S.C. 4321 et seq.) for Federal-aid highway and transit projects." Pub. 105-178 (June 9, 1998). *Although no longer required*, "major investment studies" continue to be allowed at the discretion of the State or local agency.

*Id*. at fn. 4 (emphasis added).

The clear position of DOT, that the MIS was not required after TEA-21, was well founded.  Any attempt to enforce the MIS requirement after 1998 would have met the obvious defense of lack of statutory authority.  At this point, Moving Defendants need not raise that defense, since the federal regulations have been modified to accord with congressional direction. Thus, even if the Court were to conclude that an MIS should have been prepared in the past, no such study is currently required, and no such study was required during the relevant timeframe.

---

[23] FHWA, Transportation Issues (Mar. 14, 2002), *available at http://nepa.fhwa.dot.gov/ReNEPA/ ReNepa.nsf/discussionDisplay?Open&id=2418F2B5DBD720DB85256B7B006BC19A&Group=Transpor tation%20Issues&tab=DISCUSSION. at http://www.fhwa.dot.gov/hep tea21mem.htm.*
[24] FHWA & FTA, Integration of Planning and NEPA Processes (Feb. 22, 2005), *available at http://nepa.fhwa.dot.gov/ReNepa/ReNepa.nsf/All+Documents/9FD918150AC2449685256 FB10050726C/$FILE/Planning-NEPA%20guidance,%20legal,%20final,%202-22-05.pdf*

Plaintiffs' Count 13, alleging that an MIS was required, is without foundation and must be dismissed.  Count 15, to the extent it is based on the alleged errors in Count 13, must also be dismissed.

## II.        The APA Does Not Apply to Moving Defendants (Count 15)

In Count 15, Plaintiffs aver that Moving Defendants' actions in approving the TIP and CLRP were arbitrary and capricious, in violation of the APA, based on the alleged failures in Counts 9-13.  In addition to failing to state a claim in Counts 9-13, Plaintiffs cannot seek relief against Moving Defendants under the APA.

The APA only applies to agencies of the United States Government.  5 U.S.C. § 701(b)(1).  It does not apply to State or Local government agencies. *See, e.g., Johnson v. Rodriguez*, 943 F.2d 104, 109, n.5 (1st Cir. 1991) ("Johnson's contention that he is entitled to judicial review of MCAD's [Massachusetts Commission Against Discrimination's] finding under the Administrative Procedure Act (APA), 5 U.S.C. §701 *et seq.* (1988), is jejune.  The statute is wholly inapposite.  By its terms, the APA governs decisions by 'each authority of the Government of the United States.'"  5 U.S.C. § 701(b)(1).  It does not purport to affect the review processes of state agencies or commissions."); *Rohnert Park v. Harris*, 601 F.2d 1040, 1048 (9th Cir. 1979)  ("We note at the outset that [the APA] does not create a right of action against the [the Urban Renewal] Agency [of Santa Rosa] because it is not an 'authority of the Government of the United States.'").

The fact that the nonfederal entity receives or distributes federal funds does not alter the inapplicability of the Act.  In *Resident Council Of Allen Parkway Village v. United States Dept. Of Hous. & Urban Dev.*, suit was brought against the "Housing Authority of the City of Houston (HACH), a state agency established to provide low income persons with safe and affordable housing.  Under the terms of HACH's long term annual contributions contract with the United

States Department of Housing and Urban Development (HUD), HACH receives federal funds to subsidize low-income housing." 980 F.2d 1043, 1046 (5th Cir. 1993)(citations omitted). Nonetheless, the court correctly concluded that "[b]ecause HACH is a nonfederal entity, the district court lacked the power to enjoin it under the APA." *Id.* at 1055.

This Court has previously held that the Washington Metropolitan Area Transit Authority, a regional intergovernmental organization, is not subject to the APA. In *Birnberg v. Washington Metropolitan Area Transit Authority*, 389 F. Supp. 340 (D. D.C. 1975) this court held that "Defendant WMATA [Washington Metropolitan Area Transit, which] is an agency and instrumentality of the District of Columbia, Maryland and Virginia, [ ] is engaged in the planning and construction of the transit system to serve the Washington Metropolitan area," and is not subject to suit under the APA. 389 F. Supp. at 342-43. The court noted that "[t]he defendant is a quasi-legislative body engaged in the planning and construction of a rapid rail transit system," *id.* at 343, and therefore "[t]he Administrative Procedure Act does not apply to WMATA inasmuch as the Authority is not a federal agency." *Id.*

As stated in Plaintiffs' complaint, COG and TPB are "a regional organization of Washington area local governments," Complaint ¶ 27.[25] They are not federal agencies and therefore the APA does not apply to their actions. As a result, Count 15 must be dismissed.

## III. Conformity Determinations for Regional Transportation Plans Precede Selection of Individual Projects (Count 37)

In Count 37, Plaintiffs allege that Moving Defendants "unlawfully adopted the Metropolitan TIPs in 2004 and 2005 and the CLR Plans . . . before the [ICC] project had been found to conform under the Clean Air Act." Complaint ¶ 587. Because Plaintiffs misconstrue

---

[25] For purposes of this Motion, Plaintiffs' allegations are accepted as true. To the extent that it is pertinent, information on the actual composition of the COG and TPB are publicly available via *www.mwcog.org*.

the requirements imposed on an MPO with regard to making conformity determinations, their

Count 37 fails to state a claim and must be dismissed.

Count 37 cites the text of CAA Section 176(c)(1), which, as stated in the Complaint,

"prohibits the MPO from giving its 'approval to any project, program or plan which does not

conform.'"  Complaint ¶ 586.  However, Plaintiffs fail to cite the CAA provision which specifies

that planning (including conformity determinations) *precedes* individual project approval or

selection.  Section 176(c)(2) states that:

> [a] transportation project may be . . . approved, accepted, or funded by the
> Department of Transportation only if it meets either the requirements of
> subparagraph (D) or the following requirements -
> > (i) *such a project comes from a conforming plan and program*;
> > (ii) the design concept and scope of such project have not changed
> > significantly since the conformity finding regarding the plan and program
> > from which the project derived; and
> > (iii) the design concept and scope of such project at the time of the conformity
> > determination for the program was adequate to determine emissions.

42 U.S.C. § 7506(c)(2)(C) (emphasis added).  Under this regulatory scheme, an MPO such as

TPB evaluates the plans – the CLRP and TIP – for conformity to established air standards.

Individual projects such as the ICC that are subsequently selected for development by state or

local transportation authorities satisfy Section 176(c)(2) if they come from a conforming plan.[26]

The conforming plan comes first, then specific projects may be selected/constructed from that

plan.  Plaintiffs' Count 37 would put the proverbial cart before the horse, and fails to state a

claim.

Regulations of the Environmental Protection Agency ("EPA") explain and apply the

conformity obligations of Section 176(c)(1), establishing how "projects" and "plans" relate for

conformity purposes.  EPA understood the role of MPO planning and conformity when it

published its conformity regulations, stating: "MPOs do not necessarily adopt or approve

---

[26] The consequence of not making conformity findings is deprivation of federal funding for projects.
40 C.F.R. § 93.150(a).

projects, and are not required by the Clean Air Act to make project-level conformity

determinations unless they perform a project-level adoption or approval role." 58 FED. REG.

62188, 62207 (Nov. 24, 1993).[27]  Here, the TPB had no project-level approval role for the ICC

and Plaintiffs make no allegations to the contrary.

The EPA conformity regulations, 40 C.F.R. § 93.100, *et. seq.* ), confirm that MPOs need

not undertake project-specific conformity determinations.  They state that "[i]n order for each

transportation plan, program and FHWA/FTA project to be found to conform, the MPO and

DOT must demonstrate that the applicable criteria and procedures in this subpart are satisfied[.]"

40 C.F.R. § 93.109(a).  "The criteria for making conformity determinations differ based on the

action under review (transportation plans, TIPs, and FHWA/FTA projects) . . . ."  *Id.*  For each of

these actions, the specific criteria to be applied are identified in Table 1 of 40 C.F.R. § 93.109.

40 C.F.R. § 93.109(b).[28]

The first requirement applies to both TIPs and CLRPs: they must demonstrate

consistency with the SIP's motor vehicle emissions budget.[29]  40 C.F.R. § 93.118.  This is not a

project-specific test, since it compares the emissions from the entire TIP and CLRP with the

---

[27] The MPO's conformity determinations are reviewed and approved by both EPA and FHWA or FTA.
23 C.F.R. §§ 450.330(b) and 450.322(d)(FTA); FHWA, Transportation Conformity: A Basic Guide for
State and Local Officials, *available at www.fhwa.dot.gov/environment/conformity/basic3gd.htm* (EPA).
Following the February 14, 2007 rulemaking, the relevant provisions of 23 C.F.R. § 450.330(b) are now
found in 450.324(a); those in 450.322(d) are now in 450.322(l).

[28] CLRPs must comply with 40 C.F.R. § 93.113(b) and TIPs with 40 C.F.R. § 93.113(c). 40 C.F.R. §
93.109, Table 1  In addition, both CLRPs and TIPs must comply with 40 C.F.R. §§ 93.118 or 93.119.  40
C.F.R. § 93.109, Table 1.

[29] A "motor vehicle emissions budget" is "that portion of the total allowable emissions defined in
the submitted or approved control strategy implementation plan revision or maintenance plan for
a certain date for the purpose of meeting reasonable further progress milestones or demonstrating
attainment or maintenance of NAAQS, for any criteria pollutant or its precursors, allocated to
highway and transit vehicle use and emissions."  40 C.F.R. § 93.101.

emissions budget in the SIP.  *Id.*  No project-specific conformity analysis is needed to comply with this test.[30]

The second requirements for CLRP and TIPs are different, but neither is project-specific For conformity of the CLRP, the second criterion is satisfied if the following two conditions are met:

> (1) The transportation plan, in describing the envisioned future transportation system, provides for the timely completion or implementation of all TCMs [Transportation Control Measures] in the applicable implementation plan which are eligible for funding under title 23 U.S.C. or the Federal Transit Laws, consistent with schedules included in the applicable implementation plan.
> (2) Nothing in the transportation plan interferes with the implementation of any TCM in the applicable implementation plan.

40 C.F.R. § 93.113(b).  Conformity determinations for the CLRP are directed to be conducted for the entirety of the plan, which, as described above, presents all regional projects planned for a twenty year period..  Nothing in this regulation requires the MPO to conduct a conformity determination of an individual project at all, much less conduct such project-level conformity, prior to CLRP approval.

Similarly, the second TIP conformity requirement is not project-specific, providing that the MPO measures the TIP (i.e., all projects in the TIP) against the SIP:

> [T]his criterion is satisfied if the following conditions are met:
> (1) An examination of the specific steps and funding source(s) needed to fully implement each TCM indicates that TCMs which are eligible for funding . . . are on or ahead of the schedule established in the applicable implementation plan, or, if such TCMs are behind the schedule established in the applicable implementation plan, the MPO and DOT have determined that past obstacles to implementation of the TCMs have been identified and have been or are being overcome, and that all State and local agencies with influence over approvals or funding for TCMs are giving maximum priority to approval or funding of TCMs over other projects within their control, including projects in locations outside the nonattainment or maintenance area.
> (2) If TCMs in the applicable implementation plan have previously been programmed for Federal funding but the funds have not been obligated and the

---

[30] There is a provision, not relevant here, for situations where the SIP does not contain a motor vehicle emissions budget. 40 C.F.R. § 93.119.  The test set forth in this provision is also not project-specific.  *Id.*

> TCMs are behind the schedule in the implementation plan, then the TIP cannot be found to conform if the funds intended for those TCMs are reallocated to projects in the TIP other than TCMs, or if there are no other TCMs in the TIP, if the funds are reallocated to projects in the TIP other than projects which are eligible for Federal funding intended for air quality improvement projects, e.g., the Congestion Mitigation and Air Quality Improvement Program.
>   (3) Nothing in the TIP may interfere with the implementation of any TCM in the applicable implementation plan.

40 C.F.R. § 93.113(c).  Thus, the conformity regulations essentially allow a conformity finding if the TIP and CLRP are consistent with the SIP.  In layman's terms, this means that the MPO looks at all of the projects in its plan, and any other measures in its plan, and determines that those combined elements, if completed, will not result in air emissions that would violate the provisions which have been established in the SIP to achieve CAA compliance.

Nothing in these regulations requires the MPO to conduct a conformity evaluation of any specific project at all, much less prior to TIP approval.  To impose such a requirement would be contrary to the express language of the CAA and its regulations and offend the sensible structure and sequence of approvals mandated under federal law: States establish their air emissions budgets through development of SIPs; regional planning entities such as MPOs use that SIP information to make conformity determinations for their TIPs and CLRPs; and specific projects that are derived from those TIPs and LRPs (found to conform to SIP standards) may go forward subject to certain project-level evaluations.  The system makes sense.  If the plan – with all regional projects – conforms to the SIP, then individual projects within that plan should not result in non-compliance with the SIP.

In contrast to the planning level conformity obligations of the MPO, there may be, under certain circumstances, an FHWA obligation to conduct additional analyses of conformity at the project-level.  In general, as explained above, the regulations contemplate that there must be a conforming TIP and CLRP at the time of project approval, 40 C.F.R. §§ 93.114, and that a

project must come from that conforming TIP and CLRP.  40 C.F.R. §§ 93.115(a).[31]  In

provisions not relevant to this Motion, the regulations identify situations where a project that

comes from a conforming plan might nonetheless need additional conformity evaluations.  For

example, 40 C.F.R. § 93.116 establishes requirement to perform a project level "hot spot"

analysis in CO and $PM_{10}$ non-attainment and maintenance areas, and 40 C.F.R. §§ 93.116 and

93.117 set requirements for compliance with $PM_{10}$ and $PM_{2.5}$ control measures, if applicable.

These project-level determinations would, in all instances, occur *after* the MPO has made its

conformity determination for its TIP and CLRP.  Plaintiffs have made no allegations that

Moving Defendants violated any legal standards for the project-level conformity determinations

made in connection with the ICC project.[32]

EPA has directly addressed the issue, implied but not expressed in Plaintiffs' Count 37,

of what happens to the transportation plans if a specific project that is included in a conforming

plan "fails" to meet project level conformity assessments.  EPA addressed comments that raised

this point in connection with its most recent amendments to the conformity regulations:

Comment

Two commenters believed that transportation plans and TIPs cannot be found to
conform if they include projects that do not meet Clean Air Act requirements. The
commenters stated that the conformity rule does not explain how MPOs will
implement the Clean Air Act requirement to not ''approv[e] any project, program
or plan which does not conform.'' The commenters believed that if projects are
found not to conform after the TIP has been approved, there should be a
requirement to reconsider the TIP so that there is an opportunity to revisit the
regional allocation of available resources. If this opportunity is not provided,
commenters were concerned that resources may not be available to remedy or
mitigate the impacts of a particular project's conformity determination.

---

[31] Despite this language, a project which is not from a conforming plan LRP and TIP can still be found to
conform if it meets the other requirements outlined in Table 1 of 40 C.F.R. § 93.109.  40 C.F.R.
§ 93.115(a).  That is, projects can get a "second shot" at demonstrating conformity.

[32] In contrast, Plaintiffs have made numerous allegations that the FHWA violated obligations related to
project level conformity determinations for the ICC.  *See* Complaint, ¶¶ 419-565.  Of course, nothing in
this Motion to Dismiss addresses any claims made against FHWA.

Response

EPA believes that MPOs and project sponsors are already fulfilling the Clean Air Act requirement to not ''approv[e] any project, program or plan which does not conform.'' Furthermore, existing transportation planning and conformity requirements already provide the opportunity to reconsider the allocation of resources in the event that a project cannot meet project-level conformity requirements.

Section 93.122(a)(1) of the conformity rule requires that regional emissions analyses, which serve as the basis for determining whether or not an area conforms to an approved or adequate SIP motor vehicle emissions budget or passes an interim emissions test before budgets are available, include all regionally significant projects expected in the nonattainment or maintenance area and account for the VMT from non-regionally significant projects that are not explicitly modeled. Clearly, not all of the expected projects planned for an area would have received a project-level conformity determination prior to the time that they are included in the regional emissions analysis for a nonattainment or maintenance area because project-level determinations are not made until a project completes the required National Environmental Policy Act (NEPA) process.

If during the NEPA process a project initially does not meet project-level hot-spot requirements, there would be two possible outcomes. In most cases the project sponsor would attempt to mitigate project emissions that are affecting concentrations either through changes in the project's design or through implementation of other measures that reduce concentrations within the geographic area impacted by the project. If a project sponsor was not able to mitigate the impacts of such project, the project could not move forward because a project-level conformity determination could not be made. Since transportation plans and TIPs are updated on a regular basis, the MPO would be able to reallocate the funding from the project to other projects at that time.

71 FED. REG. 12467, 12482-83 (Mar. 10, 2006).  In short, EPA interprets the conformity regulations in the same manner as set out in the Motion.  MPOs conduct planning level conformity determinations, which occur before projects are developed to the point where project-level conformity assessments are done.  If a project subsequently "fails" project-level conformity, there is no flaw in the MPO plan.  Rather, the consequence to regional planning if a project "fails" to satisfy project-level conformity is that the project would be removed from or revised in subsequent regional transportation plans.

Count 37, alleging that Moving Defendants could not approve the TIP or CLRP without a

project-level conformity determination for the ICC, should be dismissed.

## Conclusion

For the above stated reasons, Plaintiffs have failed to state a claim for relief which can be granted in Counts 9-13, 15 and 37 of their Complaint. As those are the only Counts with allegations against Moving Defendants, the Court should dismiss Moving Defendants from this case with prejudice.

Respectfully Submitted,

Date: March 8, 2007

/s/ *Margaret N. Strand*
Margaret N. Strand, D.C. Bar No. 936419
Venable LLP
575 7th St. NW
Washington D.C.  20004
(202) 344-4699 - Telephone
(202) 344-8000 - Facsimile

Christopher R. Mellott, MD Bar No. 03734
Venable LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland  21201
(410) 244-7552 - Telephone
(410) 244-7742 - Facsimile

Lee Ruck
General Counsel
Metropolitan Washington Council of Governments
    and Washington Regional Transportation
    Planning Board
777 North Capitol Street, NE, Suite 300
Washington, DC 20002
(202) 962-3200 - Telephone
(202) 962-3201 - Facsimile

Counsel for Defendants
  Metropolitan Washington Council of Governments and
  National Capital Region Transportation Planning Board

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------

**ENVIRONMENTAL DEFENSE and**     )
**SIERRA CLUB, INC.,**     )
    )
              **Plaintiffs,**     )
    )
        **vs.**     )      **Case No. 1:06-2176(GK)**
    )
**UNITED STATES DEPARTMENT OF**     )
**TRANSPORTATION,** *et al.,*     )
    )
           **Defendants.**     )

---------------------------------------------------

### [PROPOSED] ORDER

Upon review of the Motion To Dismiss Of Defendants Metropolitan Washington Council Of

Governments; Vincent C. Gray, In His Official Capacity As Board Chair Of The Metropolitan

Council Of Governments; National Capital Region Transportation Planning Board; And

Katherine Hutchins, In Her Official Capacity As Chairperson Of The National Capital Region

Transportation Planning Board ("Moving Defendants"), the Memorandum of Points and

Authorities in Support thereof, the Memorandum of Points and Authorities in Opposition thereto,

and the complete record of this case, the Court grants Moving Defendants' Motion.  It is

HEREBY

       ORDERED that the Motion is GRANTED; and it is further

       ORDERED that the Complaint as to Moving Defendants is hereby DISMISSED WITH

            PREJUDICE.


_____              _____
Date                                        United States District Judge

Respectfully Submitted,


Margaret N. Strand, D.C. Bar No. 936419
Venable LLP
575 7th St. NW
Washington D.C.  20004
(202) 344-4699 - Telephone
(202) 344-8000 - Facsimile

Christopher R. Mellott, MD Bar No. 03734
Venable LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland  21201
(410) 244-7552 - Telephone
(410) 244-7742 - Facsimile

Lee Ruck
General Counsel
Metropolitan Washington Council of Governments
    and Washington Regional Transportation
    Planning Board
777 North Capitol Street, NE, Suite 300
Washington, DC 20002
(202) 962-3200 - Telephone
(202) 962-3201 - Facsimile

Counsel for Defendants
  Metropolitan Washington Council of Governments and
  National Capital Region Transportation Planning Board