IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Environmental Defense and Sierra Club, ) Plaintiffs, ) v. ) ) United States Department of Transportation, ) et. al., ) Defendants. ) | Civil Action No. 06-2176  FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER |

## INTRODUCTION

The Federal Defendants[1] have moved to transfer this action to the United States District

Court for the District of Maryland where it can be consolidated with the related case filed in that

jurisdiction (the "Maryland Action"). Both the Maryland Action and this case challenge the

same project -- the Inter-County Connector ("ICC") -- an 18-mile highway project to connect

Montgomery and Prince Georges' Counties in Maryland. Both complaints raise similar claims,

challenging the same administrative decision, are based on the same administrative record, and

seek the same relief, thus warranting consolidation. The Federal Defendants have moved to

transfer this case to the District of Maryland, rather than vice-versa, because the construction,

operation and maintenance of the ICC Project will be undertaken by three Maryland agencies: the

Maryland State Highway Administration, the Maryland Department of Transportation, and the

Maryland Transportation Authority; all significant decisions, including the final record of

---

[1]"The Federal Defendants" include the United States Department of Transportation ("DOT"), Mary E. Peters, in her official capacity as Secretary of the DOT, the Federal Highway Administration ("FHWA"), and J. Richard Capka, in his official capacity as FHWA Administrator.

1

decision for the Project that is challenged in both actions, were made in the State of Maryland; and the entire ICC Project is located in Maryland and will directly impact only Maryland residents.

Plaintiffs' in this case have opposed the motion to transfer ("Pltfs. Opp."). All defendants in this case, and all defendants in the Maryland Action, including the State of Maryland, support the motion to transfer.

## I.    THIS CASE SHOULD BE CONSOLIDATED WITH THE RELATED CASE PENDING IN THE DISTRICT OF MARYLAND

Plaintiffs suggest that consolidation of related cases in different courts is not an appropriate basis for transfer (citing no authority) (Pltfs. Opp. at 18). However, this Court has recognized that anticipation of consolidation is a sufficient reason for transfer. Scarborough v. National Ass'n of Surety Bond Producers, No. 06-79, 2007 WL 417020 at * 3-4 (D.D.C. Feb. 7, 2007) (motion to transfer granted based on the movant's representation that the transferred case would be consolidated with a case pending in the transferee forum). Thus, while the issue of consolidation is not before this Court, the fact that a related case is pending in another district is undeniably relevant to the motion to transfer.

Plaintiffs' argument that consolidation may not be appropriate (Pltfs. Opp. at 18-19) borders on the frivolous. It is belied by their own filing in this case of a "Notice of Related Case," identifying the case pending in the United States District Court for the District of Maryland and admitting that this action "involves common issues of fact," and "grows out of the same event or transaction" as the Maryland Action. (Dkt. no. 4). The words used by Plaintiffs in the Notice of Related Case mirror the standard for consolidation. F.R.Civ.P. 42(a). Plaintiffs'

recognition of the overlap between the two cases is illustrated further by the history of the administrative proceedings, when Mr. Replogle (who has filed a Declaration in this case opposing transfer) acted as a lead proponent for both the Plaintiffs in this action and the Plaintiffs in the Maryland Action in submitting joint comments.[2/]  It was not until the lawsuits were filed that various plaintiffs divided some of their claims and filed suit in two different courts.

Plaintiffs suggest three factors to distinguish the two cases (Pltfs. Opp. at 19) -- none of which can withstand scrutiny.  First, Plaintiffs' assertion that "the two cases involve different administrative records and decisions" is flatly wrong.  Both cases challenge a single administrative decision - the Record of Decision ("ROD") authorizing the ICC Project.  The ROD is a single decision document, based on a single administrative record.[3/]  Thus, while the two pending lawsuits may challenge different parts of the administrative decision, and may rely on different portions of the administrative record, they are both challenging the same decision and seeking the same relief.

_____

[2/]As noted in the Federal Defendants' Memorandum in Support of Motion to Transfer ("Fed. Def. Opening Mem."), Mr. Replogle submitted joint comments on behalf of Plaintiffs in this case and on behalf of Plaintiffs in the Maryland Action, raising issues that now form the basis for the Plaintiffs' claims against the Federal Defendants in this case and in the Maryland Action.  Mr. Replogle also submitted a joint set of comments, on behalf of both Plaintiffs in this case and in the Maryland Action, addressing the conformity analysis that is now the basis for the challenge in Part II of Plaintiffs' Complaint in this case.  The comments also demonstrate that the Sierra Club was chiefly represented during the administrative proceedings by its local Maryland Chapters - not by the D.C. office.  Both of the sets of comments were submitted to the Court as Exhibits D and E to Fed. Def. Opening Mem.

[3/]A draft of the Index to the Administrative Record was provided to counsel for Plaintiffs in this action and to counsel for Plaintiffs in the Maryland Action.  Because there is only one Administrative Record, both Plaintiffs were provided identical drafts.  See copy of e-mail dated February 23, 2007 from Laura Maroldy (counsel for the Federal Defendants) to Langley Shook (counsel for Plaintiffs in the Maryland Action) and Erik Bluemel and Bob Yuhnke (counsel for Plaintiffs in this case) (submitted herewith as Exhibit F).

Second, Plaintiffs suggest that "the overlap . . . is minimal, given the number of claims raised, extent of the administrative record, and the factual differences in the claims raised by the parties." While it is true that Plaintiffs have raised a number of claims, and it is true that the administrative record is large, neither of these facts argues against consolidation. On the contrary, the fact that the case is large and complex demonstrates that consolidation is warranted to minimize confusion and avoid the risk of inconsistent results. And the suggestion that there are distinct factual bases for the claims is wrong as a matter of law - because the only "factual bases" for the decision are found in the administrative record which, as indicated above, is a single record supporting a single decision. Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("Appellants . . . overlook the character of the questions before the district court when an agency action is challenged. The entire case on review is a question of law, and only a question of law.").

Finally, Plaintiffs suggest that the claims based on NEPA in Part I of the Complaint in this case, and the claims based on NEPA in the Maryland Action, "depend on distinct factual bases." Not only is the contention wrong as a matter of law, as discussed above, but it is also wrong as a matter of fact. As described in the Fed. Def. Opening Mem. at 6-7, both lawsuits assert nearly identical NEPA claims against the Federal Defendants, alleging that the ICC Project EIS had an unlawfully narrow purpose and need, failed to explore reasonable alternatives, failed to assess environmental impacts, and failed to assess and discuss mitigation. Plaintiffs seek to distinguish the claims on grounds that the focus of their NEPA claims is "protection of human health and the environment from traffic-related air pollution," whereas the Maryland Action "primarily relates to impacts to aquatic resources" from "induced growth and development."

This is a distinction without merit. While Plaintiffs may focus on slightly different aspects of the EIS, the claims are raised under the same statute, challenging the same EIS, for the same Project. Morever, although Plaintiffs emphasize that the focus of their claims is air quality, the Maryland Action also includes a claim focused on the potential impacts related to air pollution. See Count 4 of the Complaint in Maryland Action at 33-38 (Exhibit A to Fed. Def. Opening Mem.)[4]

## II.    THE DISTRICT OF MARYLAND IS THE MORE APPROPRIATE VENUE

The Federal Defendants have not argued that this Court lacks jurisdiction over the claims, or that venue would not be appropriate in this Court, if this were the only action filed challenging the ICC project. However, a related action has been filed in the United States District Court for the District of Maryland, which also has jurisdiction over the controversy and where venue is also appropriate, as conceded by Plaintiffs (Pltfs. Opp. at 10, n. 11). Therefore, the issue is not whether the case was properly filed in the District of Columbia; the question is, as between the two districts where cases were filed, which is the more appropriate venue.

Plaintiffs agree that venue is proper in the State of Maryland (Pltfs. Opp. at 10, n.11).

_____

[4]The only issues in the Complaint filed in this case that do not directly overlap with the claims asserted in the Maryland Action are the claims asserted against the Metropolitan Planning Organization ("MPO") (counts 9-13, 15, 37 of the Complaint). Unlike the claims against the Federal Defendants, those claims are not based on the same Administrative Record. The Federal Defendants have moved to transfer the entire case for purposes of judicial efficiency since those claims do challenge the ICC Project, and there is substantial overlap, as most, if not all, of the documents in the administrative record developed by the MPO are included the Administrative Record for the ICC Project. However, the claims against the MPO can be easily severed from the balance of the case. In that way, the claims against the Federal Defendants that are based on the same Administrative Record and overlap with the claims asserted in the Maryland Action could be transferred for consolidation, and the claims against the MPO could be resolved by this Court. In fact, the MPO has already filed a motion to dismiss all claims against it, and has suggested that the motion may be resolved either in this court prior to transfer, or by the District of Maryland after transfer. The Federal Defendants will be filing a similar motion which may also be considered by this Court or transferred to the District of Maryland.

Plaintiffs agree that, due the close proximity between the State of Maryland and the District of Columbia, the issue of convenience to the parties is not significant factor (Pltfs. Opp. at 9-10, n.10). Plaintiffs agree that because this case will be decided based on review of the administrative record, neither the convenience of witnesses, nor the availability of evidence, is a significant factor (Pltfs. Opp. at 11, n.12). And Plaintiffs agree that, because this is a record review case that will not require pre-trial discovery or an evidentiary trial, the relative congestion of the dockets in the courts is not a significant factor (Pltfs. Opp. at 11, n.13). However, Plaintiffs raise a number of other issues in opposition to the Motion to Transfer which, as discussed below, are equally as insignificant as the issues which Plaintiffs have conceded.

### A. Plaintiffs' Choice of Forum Is Not Entitled to Deference

The centerpiece of Plaintiffs' argument is the claim that Plaintiffs' choice of forum is entitled to deference (Pltfs. Opp. at 9-13, 16, 17, 18, 26, 27). That is true when there is only one case filed and defendant seeks to transfer the case to another forum. But when there is a related case pending in another forum, and transfer is for the purpose of consolidation, Plaintiffs' choice of forum in this case should not be accorded more deference than the Plaintiffs' choice of forum in the Maryland case. Indeed, as noted in the Fed. Def. Opening Mem., to the extent either group of Plaintiffs is entitled to deference in their choice of forum, the balance weighs in favor of the Maryland Plaintiffs, all of whom reside in Maryland, rather than the D.C. Plaintiffs, which are national organizations.[5]

_____

[5]Plaintiffs contend that the fact that they are national organizations with headquarters outside of the District of Columbia does not deprive them of deference for their choice of forum because they have local offices in the District of Columbia, some of their members reside in the District of Columbia and they have substantial ties to the District of Columbia (Pltfs. Opp. at 12-13). At most, this suggests that the District of Columbia is one of several forums where the Plaintiffs

The only ostensible justification for according any deference to the Plaintiffs' choice of forum is their suggestion that local counsel could not be found in the State of Maryland (Pltfs. Opp. at 17; Replogle Declaration). However, Plaintiffs' claim of hardship is unavailing. Mr. Yuhnke was recommended by Mr. Replogle and retained by Plaintiffs as lead counsel, based on his expertise in the issues (Replogle Decl. ¶ 7). As lead counsel, he will presumably have the major responsibility for the representation of Plaintiffs and, because he is not admitted in either Maryland or the District of Columbia, his participation does not weigh in favor of either forum. Moreover, Mr. Yuhnke could easily be admitted to practice before the U.S. District Court for the District of Maryland. The Local Rules for the U.S. District Court of Maryland require only that an attorney be a member in good standing of the highest court in the state where he maintains his office, and not necessarily a member of the Maryland bar. L.R. 701.1.a.

The U.S. District Court for the District of Maryland also allows for *pro hoc vice* admission by out-of-state counsel. L.R. 101.1.b. The role of local counsel is minimal - local counsel must sponsor the *pro hoc vice* admission, but the case may be presented by the *pro hoc vice* attorney. Thus, while Mr. Replogle was unable to find counsel in Maryland who were available to "commit the time required to prosecute this case, and who would be willing to represent Environmental Defense on a *pro bono* basis, or at deeply discounted rates" (Replogle Decl. ¶ 9), he does not indicate the extent of his effort to find counsel in Maryland willing to

---

could have declared residency for purposes of obtaining deference to their choice. By contrast, Maryland is the only forum where the Maryland Plaintiffs can claim residency, and thus their choice of forum is entitled to greater deference.

serve the limited role of local counsel.[6]

Plaintiffs also contend that transfer would impose a hardship on existing *pro bono* counsel, who have invested substantial time in "mastering the administrative record in this complex case, drafting and filing the complaint, and drafting substantive motions relying this Court's precedent". Pltfs. Opp. at 17.[7] It is difficult to understand how any of existing counsel's efforts would be wasted if the case were transferred to the District of Maryland. The administrative record is the same - whether the case is tried in D.C. or Maryland - thus the "hundreds of hours" invested in "mastering large portions of the administrative record" (Pltfs. Opp. at 17) will be of equal value in either forum. Plaintiffs' Complaint (and the Federal Defendants' Answer to that Complaint) would be transferred to Maryland as is - the transfer would not require preparing or filing a new Complaint or Answer. And although Plaintiffs contend that they have "drafted substantial motions" - no motions have yet been filed, and any motions Plaintiffs intend to file may be filed in either court with the change of a case caption.

In sum, Plaintiffs' alleged "hardship" in retaining local counsel (Pltfs. Opp. at 16), and their expressed concerns about being forced to abandon the claims entirely (Pltfs. Opp. at 17) are overstated. Mr. Yuhnke is lead counsel for Plaintiffs and can represent them in either forum.

---

[6]Mr. Replogle has not provided any information about his efforts to find local counsel in Maryland. For example, he did not indicate whether he contacted the University of Maryland Environmental Law Clinic, that often represents non-profit environmental organizations pro bono. See http://www.law.umaryland.edu/specialty/environment/clinic.asp.

[7]Existing pro-bono counsel could also be admitted to practice in the District of Maryland. A review annual reports of the Georgetown Law Center Institute for Public Representation (the existing local counsel) posted on their website http://www.law.georgetown.edu/clinics/ipr/ indicates that the Institute for Public Representation has handled numerous cases outside of the Washington D.C., including in Maryland.

8

**B. Defendants' Choice of Forum is Proper**

Plaintiffs suggest, inappropriately, that filing the motion to transfer gives rise to an implication of forum shopping by the Federal Defendants. (Pltfs. Opp. at 14). The Federal Defendants are confident of their ability to defend the ICC Project in either forum, but because consolidation of the two cases is necessary and appropriate, one of them must be transferred. The Federal Defendants have chosen to seek transfer of this case based on an objective and neutral evaluation of the factors for consideration in determining venue. In the single case cited by Plaintiffs to support the allegation of forum shopping, there were not two cases pending that warranted consolidation; rather, only one claim was filed, and the defendants sought to transfer it to another forum where it may have been brought. Because the Federal Defendants did not choose either forum where the ICC challenges are filed, the case is inapposite and the implication of forum shopping is wholly without merit.

Plaintiffs suggest that the MPO Defendants do not object to litigation of the claims in this Court because they did not file their own motion to transfer or join in the motion filed by the Federal Defendants. (Pltfs. Opp. at 12). As noted in the Federal Defendants' Motion to Transfer, the MPO defendants expressly consented to the motion to transfer. (Fed. Def. Opening Mem. at 1). Moreover, the MPO Defendants have now informed the Court of their support for the motion to transfer. See MPO Memorandum in Response to Plaintiff's Opposition to Motion to Transfer (dkt. no. 14-1, filed March 9, 2007).

Further, the State of Maryland has a strong interest in defending the challenged decision,

and is a party in the Maryland Action.[8]  The State of Maryland has filed a motion to intervene in

this case for the purpose of supporting the motion to transfer, and has filed a Memorandum in

Support of the Motion to Transfer.

Therefore, all of the defendants - in both this case and in the Maryland Action, support

the transfer of this case to Maryland.

## C.  The "First to File Rule" is Not a Significant Factor

Plaintiffs recognized that the D.C. Circuit has refused to mechanically apply the first-filed

rule (Pltfs. Opp. at 21, citing Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 628 (D.C.

Cir. 1975)), yet nonetheless seek an undue advantage by reliance on the "first-filed" rule, alleging

that the Complaint in this case was first-filed.[9]  The D.C. Circuit has emphasized that in

circumstances similar to the instant case -- where two related cases are filed in different districts -

the first-to-file rule is not applied:

> Where the issues arise out of the some "transaction," as they do
> here, the district court next decides which district court should
> adjudicate the case.  Although some courts make this
> determination by using the so-called "first-to-file" rule, we have
> emphasized that the district court must balance equitable
> considerations rather than using "a mechanical 'rule of thumb'."

Handy v. Shaw, Bransford, Veilleus & Roth, 325 F.3d 346, 350 (D.C.Cir. 2003) (internal

---

[8]The State's Motion to Intervene in the Maryland Action was unopposed and was granted on
February 22, 2007 (dkt. no. 11).

[9]Plaintiffs provided no support for their assertion that the D.C. case was filed first.  However,
counsel for the Federal Defendants have confirmed that the Complaint was stamped as filed at
3:01 a.m., even though the civil cover sheet noted filing at 6:29 p.m.  To the extent the time of
filing has any relevance whatsoever, the middle of night filing suggests a race to the courthouse,
which should not be encouraged, and implies forum shopping, which should not be rewarded.

citations omitted).  The Federal Defendants originally believed that the Maryland Action was

first -filed,[10] but did not rely upon the first-filed rule as a basis for transfer, recognizing that it is

not a significant factor, particularly when both cases were filed on the last possible date

permitted, and were filed only hours apart.  It should be given no weight by this Court in

determining the motion to transfer.

### D.  Familiarity with the Governing Law is not a Significant Factor.

Plaintiffs argue that this Court should retain the case because "it has more experience

hearing agency actions than the District Court for the District of Maryland" and retaining

jurisdiction would permit an appeal to be heard by the Court of Appeals for the District of

Columbia Circuit."  (Pltfs. Opp. at 22).  The D.C. Circuit has rejected the contention that the

District of Columbia is more competent to determine issues of federal environmental law than

any other federal court.  As stated in National Wildlife Federation v. Harvey, 437 F. Supp. 2d 42,

49 ( D.D.C. 2006):

> [T]he fact that this case involves the interpretation of federal
> statutes does not automatically make the District of Columbia more
> competent to decide the case than Florida, as Plaintiffs allege.
> Where plaintiffs' claims are based on federal environmental law,
> this Court follows "the principle that the transferee federal court is
> competent to decide federal issues correctly." Sierra Club, 276 F.
> Supp.2d at 70 n. 6 (quoting In re Korean Air Lines Disaster of
> Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C.Cir.1987)). Thus, both
> courts are competent to interpret the federal statutes involved in
> this case, and there is no reason to transfer or not transfer based on
> this factor.

---

[10]Counsel for the Federal Defendants represented that the Maryland Action was first-filed,
relying upon the date stamp on the complaint and civil cover sheet in the Maryland Action
indicating filing at 9:00 a.m.(both of which were attached as Exhibits A and B to the Motion to
Transfer), and the date stamp on the civil cover sheet filed in this Court indicating filing at 6:29
p.m., referencing the docket entry in this Court.  Fed. Def. Opening Mem. at 2.

This case involves record review of a final agency action under the Administrative Procedure Act. 5 U.S.C. § 704. The United States District Court for the District of Maryland is certainly competent to conduct the judicial review of the decision, and the Fourth Circuit is competent to hear any appeal that may follow. Therefore, the familiarity with the governing law is not a significant factor for consideration as between the two federal courts.

## III.    THE BALANCE OF INTERESTS WEIGHS IN FAVOR OF TRANSFER TO THE DISTRICT OF MARYLAND

Both parties have set forth the private interest factors and the public interest factors for consideration by this Court in determining the appropriate venue for resolution of the challenges to the ICC Project. (Fed. Def. Mem. at 11-12, 15; Pltfs. Opp. at 11). As discussed above, many of the factors that may be relevant considerations in a motion to transfer are not significant factors in this case, where Defendants intend to seek consolidation of the case with a related case pending in the transferee forum. The question for the Court is whether the balance of interests in the ICC Project weighs in favor of Maryland or the District of Columbia. The balance tips decidedly in favor of the District of Maryland because the entire ICC Project will be located in the State of Maryland, the State of Maryland is the lead authority for the Project, the State of Maryland is funding most of the Project, the most of the significant decisions were made in the State of Maryland and by the State of Maryland, the Project will have a direct impact on residents in the State of Maryland, the State of Maryland has an important interest in defending the Project, and the State of Maryland is a party in the Maryland Action. Plaintiffs offer three reasons in support of their argument that the challenges to the Project should be determined by this Court. As discussed below, the points raised by Plaintiffs, even when viewed collectively, do not outweigh the strong interest of the State of Maryland in the Project.

**A.    The Decisions and Approvals Made in the District of Columbia Do Not Outweigh the Decisions Made in the State of Maryland**

As pointed out in the Fed. Def. Opening Mem., the federal role in the Project is quite limited.  Approximately two-thirds of the cost of the entire Project will be borne by the State of Maryland, and no part of the Project is funded by the District of Columbia.  See https://fhwaapps.fhwa.dot.gov/foisp/publicActive.do.

The Project approval by the FHWA was also made in the State of Maryland by the Maryland Division office of the FHWA.  Plaintiffs incorrectly contend that the relevant decisions regarding federal funding and approvals were made in the District of Columbia, rather than in the Maryland Division office, because the local office of the FHWA must comply with national guidance and is subject to general oversight by the headquarters of the agency (Pltfs. Opp. at 6-7, 15 n.14).  However, the FWHA Delegations and Organization Manual delegates to the Division Administrator the authority to make all environmental approvals, including those required under NEPA and the Clean Air Act, for federally assisted state highway projects.  FHWA Order M1100.1A, part 1, chap. 5, sec 22.,[1/] Accordingly, the ICC ROD, which made those approvals, was issued by FHWA's Maryland Division Administrator.

Moreover, Plaintiffs' argument that federal funding and oversight or state projects are sufficient to establish venue in the District of Columbia proves too much.  If that were so, then every significant highway project throughout the nation would be venued in this District, for they typically receive some federal funding.  Further, if the oversight of local offices by the headquarters offices of federal agencies were sufficient to establish venue in the District of

---

[1/]The Order is available at http://www.fhwa.dot.gov/legsregs/directives/orders/m11001a.htm)

13

Columbia, then every challenge to federal agency action would be brought in the District of Columbia because all federal agencies have headquarters in the District of Columbia. Plaintiffs' argument that the District of Columbia is the better venue for addressing their challenges against the ICC boils down to the frivolous assertion that all claims against the Federal Defendants should be brought in the District of Columbia.

Plaintiffs' reliance on Mundy v Weinberger, 554 F. Supp. 811 (D.D.C. 1982), to support their argument is misplaced. The Mundy case was not a motion to transfer venue. It was decided on a motion to dismiss for lack of venue. Thus, the issue was not whether the District of Columbia was a better venue than Virginia but, rather, whether the District of Columbia had venue at all. As noted above, the Federal Defendants do not allege that this Court lacks venue over the claims; the Federal Defendants assert, however, that the District of Maryland, which also has venue over the claims, has more direct interest in the challenged Project.

In any event, the Mundy case supports the Federal Defendants' Motion to Transfer. The court held that the District of Columbia had venue even though the challenged decision had been made in Virginia, because the decision "affected one person, holding a unique job, known to be working in a one-of-a-kind federal office *located in Washington D.C.*" Mundy at 818 (emphasis added). In this case, the focus of Plaintiffs' Complaint is the ICC Project *located in Maryland*, thus, Mundy teaches that venue is proper in Maryland, even if some of the decisions were made in the District of Columbia. Moreover, the Mundy Court itself limited the scope of the decision, noting that "[t]his is not to say that all activities occurring in any U.S. government office located near the District of Columbia may give rise to venue in this district. Suffice it to say that the Pentagon is hardly 'any' federal office." Id.

14

Plaintiffs also rely on the fact that decisions of the MPO were made in the District of Columbia (Pltfs. Opp. at 2-7).[12]   As indicated by the MPO in its Motion to Dismiss (dkt. # 13-1) at 22, the MPO did not have an approval role over the ICC.  The MPO serves the planning needs of the entire region, consisting of the District of Columbia and portions of the states of Virginia and Maryland –  including all of Montgomery and Prince Georges Counties, where the Project is located.  The MPO meetings were held in the District of Columbia because it is a central location for the area, convenient to representatives from Maryland and Virginia, but none of the MPO meetings held in the District of Columbia were devoted solely to the ICC Project.  See http://www.mwcog.org/committed/archives.asp?COMMITTEE_ID=15.  To require all challenges to the decisions by the MPO to be brought in the District of Columbia just because that is where it meets would minimize the roles of the states of Virginia and Maryland in the planning process, even when the particular project at issue is not located in the District of Columbia, as is the case with the ICC.

In any event, if one were to count all of the meetings held and decisions made by the MPO in the District of Columbia, and add to that all of the meetings held and decisions made in the District of Columbia, the number would represent a small fraction of the meetings held and decisions made in the State of Maryland.  Four public hearings were held in Maryland; twelve open houses and public workshops were held in Maryland; over 60 meetings with civic,

---

[12]Plaintiffs inappropriately place emphasis on the claims against the MPO in arguing against transfer.  The claims against the MPO are less significant than the claims against the Federal Defendants, because the claims against the MPO are asserted in only a few counts of the Complaint.  Moreover, the MPO Defendants have filed a potentially dispositive motion to dismiss all claims against them (dkt. No. 13, filed March 8, 2007) and, if that motion is granted by this Court, there will be no claims against them to transfer.

community, and business associations were held in Maryland; Maryland agencies conducted

outreach at two shopping centers in Maryland and placed Project documents for review at 23

information centers located in Maryland, and staffed informational booths at the Montgomery

and Prince Georges County Fairs, in Maryland.  See FEIS, chapter VIII.

**B.    The Effect of the Project on Residents of Maryland is Greater and More
Direct Than the Effect on Residents of the District of Columbia**

Although the entire project area is located in the State of Maryland, Plaintiffs argue that it

will adversely affect residents of the District of Columbia.  (Pltfs. Opp. at 8, 15).  The FEIS did

not identify any direct impact on the District of Columbia or its residents, and none are alleged

by Plaintiffs in their Complaint.  In contrast, there are direct impacts on residents of the State of

Maryland.[13]

For example, Plaintiffs allege that the ICC is intended to serve the transportation needs of

the Washington Metropolitan Area, including the District of Columbia and its residents (Pltfs.

Opp. at 7).  However, the Purpose and Need chapter of the FEIS identified five goals of the ICC

Project, only one of which (the goal of advancing homeland security in the region) is even

arguably relevant to the transportation needs of D.C. residents.  See FEIS, chapter 1.  Moreover,

the record shows that only a very small percentage of the persons who will use the ICC are from

the District of Columbia.  See graphic depicting anticipated users of the ICC, FEIS, Volume 3,

Appendix R-9, page 7.

---

[13] The level of interest in the project is demonstrated by the participation in the administrative
process.  During the notice and comment period on the Draft EIS, 4,756 pieces of
correspondence were received, and only 204 of them were from persons living in the District of
Columbia.  On the Final EIS, only 30 pieces of correspondence were received from residents of
the District of Columbia, out of a total of 786.  See Declaration of Michele L. Jones, attached as
Exhibit G.

16

Plaintiffs allege that the residents of the District of Columbia will be adversely effected by increased pollution from the ICC (Pltfs. Opp. at 8-9).  However, Plaintiffs' assertion that D.C. residents may be adversely effected by air pollution caused by the ICC Project - nearly 10 miles away -- is inconsistent with their claims that air quality monitors should be placed within a few hundred meters of the roadway in order to effectively measure impacts on air quality (Complaint at ¶¶ 475, 502-05, 509, 563).  It is the Maryland residents, living and working closer to the ICC, who will be more directly effected by any alleged increase in emissions that may result from the ICC Project.

Plaintiffs assert a number if indirect impacts, such as increased noise and litter, on residents of the District of Columbia "who travel to the ICC right-of way- and surrounding areas to enjoy the aesthetic beauty of the area." (Pltfs. Opp. at 8-9).  To the extent any such potential impacts exist, it will clearly have a much greater and more direct effect on the Maryland residents near the ICC than on the visiting Washingtonians.

Plaintiffs also allege that the ICC Project will impact the water quality and water supply of Washingtonians, pointing to potential impact on the Patuxent Reservoirs.  The Patuxent Reservoirs provide drinking water for 500,000 Maryland residents, and serve only as a back-up source of water for the District of Columbia.  See FEIS volume 2, Appendix B, page 16. Moreover, the Plaintiffs in this case have not even challenged the Clean Water Act permits that were issued for the ICC Project, although they are challenged in the Maryland Action.

In sum, Plaintiffs' assertions that the ICC will impact residents of Washington D.C., while sufficient to establish standing for bringing the challenge, are insufficient to outweigh the potential impacts of the ICC on Maryland residents.

### C. **The Project Does Not Raise Issues of National Significance**

While the ICC Project is indeed a significant and expensive project,[14] size and importance of a project to the citizens it will serve does not equate to national significance, requiring review in the District of Columbia.  Plaintiffs do not articulate why the ICC Project is more nationally significant than any number of other important projects.[15]

Plaintiffs rely on the fact that the ICC is a part of the National Highway System to support their claim of national significance (Pltfs. Opp. at 1-2, 24).  However, the National Highway System consists of over 160,000 miles of highways. See http://www.fhwa.dot.gov/hep10/nhs and map at http://www.fhwa.dot.gov/hep10/images/nhsipg.jpg.  The fact that the 18-mile segment of the ICC will become a segment of the National Highway System does not make the Project nationally significant.  Similarly, the ICC is one of 80 projects on a Congressional list of "High Priority Corridors" (Pltfs. Opp. at 1, n.1), but that does not mean that all 80 corridors listed are nationally significant.  Indeed, Congress more recently earmarked funds for 5,173 highway projects on a list of "High Priority Projects" in subtitle G of the Safe, Flexible, Efficient Transportation Equity Act: A Legacy For Users, Pub. L. 109-59, Aug. 10, 2005, 119 Stat. 1144)

---

[14] While it is a significant and expensive Project, the 18-mile ICC is not the "third largest highway project" in the country, as Plaintiffs assert (Pltf. Opp. at 1).  There are at least 14 highway projects with similar or greater federal funding levels than the ICC Project.  See https://fhwaapps.fhwa.dot.gov/foisp/publicActive.do. Two local examples are the Woodrow Wilson Bridge reconstruction across the Potomac River, with $1.613 billion in federal funds, and the Springfield Interchange reconstruction (confluence of I-95, I-495, and I-395, popularly known as the "mixing bowl") with $637 million in federal funds.

[15] For example, Plaintiffs' challenge to the U.S. I-95 Project (Sierra Club v. U.S. Dept. of Transp., 310 F. Supp. 2d 1168 (D. Nev. 2004), arguably as large and important as the ICC Project, was filed by Mr. Yuhnke (counsel for Plaintiffs in the instant case) in Nevada, and involved challenges that are very similar – and in some instances identical – to the claims before this Court.

("SAFETEA-LU"), and the ICC Project (number 2357 in the legislation) received $3.2 million. There is, however, a much more targeted funding program created by section 1301 of SAFETEA-LU, entitled "Projects of National and Regional Significance" -- but the ICC Project is not one of the projects designated by Congress for funding under that program. SAFETEA-LU § 1301(m).

Likewise, the fact that the ICC Project was selected by the Secretary of Transportation under Executive Order 13,274 (Pltfs. Opp. at 4, 24), does not equate to national significance. The Executive Order simply provides for expedited environmental review and enhanced inter-agency coordination. Moreover, a project can be selected for the expedited review under the Executive Order only upon recommendation of the state. In this case, the State of Maryland recommended the ICC Project for expedited review under the Executive Order based upon the importance of the Project to the State of Maryland.[16] Out of twelve transportation projects have completed the expedited NEPA process under the Executive Order,[17] seven lawsuits raising environmental challenges have been filed (including the instant case). Every other lawsuit was filed in the district where the project is located.[18]

---

[16] The projects proposed by states for consideration by the Secretary can be seen at http://www.dot.gov/affairs/dot01503.htm. Following recommendation by a state, a project may be selected by the Secretary for expedited review under the Executive Order based upon eight considerations, including national or regional significance, but national significance is not a requirement. The Executive Order and selection criteria can be viewed at: http://www.dot.gov/execorder/13274/projects/selcrit/pplcrit.htm.

[17] The selected projects are identified at: http://www.dot.gov/execorder/13274/projects/pptranslist/index.htm.

[18] See Conservation Law Foundation v FHWA, U.S. District Court for the District of New Hampshire, 1:06-cv-00045PB (challenging I-93 Project in New Hampshire); Senville v. Peters, U.S. District Court for the District of Vermont, 2:093-cv-000279wks, published opinion at 327

The fact that the National Capital Region Transportation Planning Board of the Metropolitan Washington Council of Governments is a federally designated metropolitan planning organization (MPO) for the Washington D.C. Area does not make it more "nationally significant" than other federally designated MPOs in other metropolitan areas that have similar responsibilities for evaluating proposed transportation projects and adopting long range plans that may be eligible for federal funding. (Pltfs. Opp. at 4-6). The same procedures exist in other metropolitan areas, and compliance with those requirements does not require that challenges to the plans adopted be brought in the District of Columbia.

Nor does the case rise to the level of national significance just because it involves federal statutes and federal government officials. None of the cases relied upon by Plaintiffs to support their "national significance" argument involved circumstances where a related case was pending in another jurisdiction that also had venue over the controversy, and which had closer ties to the controversy than the District of Columbia.

In sum, the fact that the ICC Project is an expensive project and is to be constructed near the District of Columbia does not make it a project of such national significance that it outweighs the interest in having local controversies decided at home. See, e.g., National Wildlife Fed'n v. Harvey, 437 F. Supp. 2d at 49-50 (the fact that plaintiffs' claims invoked federal law, related to a nationally significant ecosystem [the Florida Everglades], and were brought by a national

_____

F. Supp 2d 335(2004) (challenging Chittenden County Circumferential Highway in Vermont); Coalition of 9/11 Families v. Mineta, U.S. District Court for the Southern District of New York, 05-cv-8709(JSR) (challenging Lower Manhattan Recovery Effort project in New York); City of El Segundo v. U.S. Dept. of Transp., 9th Cir. No. 05-74272; County of Los Angeles, v. U.S. Dept. of Transp, 9th Cir. No. 05-74051 (both concerning the Los Angeles International Airport project in California); and Audubon Naturalist Society v. U.S. Dept. of Transp., U.S. District Court for the District of Maryland, 06-3386-AW (challenging the ICC Project in Maryland).

environmental organization suggested that the case had a "national aspect," but that was far outweighed by the indisputable interest of the State where the project was located) (citing Sierra Club v. Flowers, 276 F. Supp. 2d 62, 71 (D.D.C. 2003)). In this case, the indisputable interest of the State of Maryland in the ICC Project far outweighs Plaintiffs' assertions of national significance.

## IV. RESPONSE TO PLAINTIFFS' REQUEST TO FILE THE ADMINISTRATIVE RECORD IN THIS COURT

In their Memorandum in Response to the Federal Defendants' Motion for Transfer, Plaintiffs seek an order that the Federal Defendants file the Administrative Record in this Court. The requested order is not necessary. If this Court denies the Motion to Transfer and determines to retain jurisdiction over any part of the Complaint, the Federal Defendants will provide this Court with the entire Administrative Record for the challenged decision, consisting of almost 200,000 pages of materials (approximately 50 linear feet of documents). However, if this Motion to Transfer is granted by this Court, there will be no reason to produce another copy of the voluminous Administrative Record.

## CONCLUSION

For the foregoing reasons, the Federal Defendants respectfully request that this action be transferred to the United States District Court for the District of Maryland, where it may be consolidated with the related case pending in that Court.

MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CYNTHIA J. MORRIS (D.C. Bar No. 358776)
SCOTT J. JORDAN

21

Environmental Defense Section
WELLS BURGESS
LAURA MAROLDY
RACHEL DOUGAN
Natural Resources Section
P.O. Box 3986
Washington, DC  20026-3986
(202) 616-7554 (Morris)
E-mail: C.J.Morris@usdoj.gov
(202) 305-0445 (Burgess)
E-mail: Wells.Burgess@usdoj.gov


By:    /s/ Cynthia J. Morris                    
       Cynthia J. Morris

## Morris, Cynthia (ENRD)

| | |
|---|---|
| **From:** | Maroldy, Laura (ENRD) |
| **Sent:** | Friday, February 23, 2007 7:25 PM |
| **To:** | lshook@Sidley.com; 'Erik Bluemel'; Bob Yuhnke |
| **Cc:** | Strand, Margaret; Linda Strozyk; 'Ed Harris'; Morris, Cynthia (ENRD); Dougan, Rachel (ENRD); Burgess, Wells (ENRD); Jordan, Scott (ENRD) |
| **Subject:** | ICC:  draft index to draft Administrative Record |
| **Attachments:** | Index to Draft AR-2-23-07.pdf |

Counsel:

 Attached is an Index to a draft of the ICC Administrative
Record. Please note that the Attachment: Index to Draft ICC
Administrative Record is being provided to you pursuant to the following
agreement of the parties:

Because of the volume of materials involved, the relatively short time
frame in which this draft index was generated, and the fact that it was
generated electronically, it is possible that documents not intended to
be included on the index, such as documents protected from disclosure in
whole or in part by the attorney-client privilege, the attorney
work-product doctrine, and/or other applicable privileges, were
inadvertently included.  Defendants and their counsel reserve all their
rights with respect to such documents, and by producing this draft index
to plaintiffs, defendants and their counsel do not waive any privileges
or protections that might otherwise apply to such documents.
Furthermore, defendants understand that plaintiffs have agreed not to
assert that inclusion or identification of otherwise-privileged or
protected documents on this draft index operates to waive any party's or
other entity's privileges or protections related thereto.

Acceptance and review of the Index to the Draft ICC Administrative
Record constitutes agreement with the above.

I understand the attached file may easily be downloaded, but if you would like a
hard copy mailed to you, please call or email Linda Strozyk who will be glad to
accommodate you.



Index to Draft
AR-2-23-07.pdf ...


Laura Maroldy
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice

mailing address:
P.O. Box 663
Ben Franklin Station
Washington, D.C. 20044-663

(202) 514-4565 (direct dial)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Environmental Defense and Sierra Club, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-2176 |
| United States Department of Transportation, | ) | |
| et. al., | ) | |
| Defendants. | ) | |

## DECLARATION OF MICHELE L. JONES

Michele L. Jones declares as follows:

1. I am an employee of McCormick Taylor, Inc., which is a consulting firm to the Maryland State Highway Administration ("MdSHA"). My position with McCormick Taylor, Inc. is Environmental Planner/Geographic Information Systems Analyst. I have been part of the Inter-County Connector ("ICC") planning team since June, 2003. I participated in the preparation of the ICC Draft Environmental Impact Statement ("DEIS"), Final Environmental Impact Statement ("FEIS"), and Record of Decision ("ROD").

2. During the preparation of the DEIS, FEIS, and ROD, I assisted MdSHA in coding and inputting documents that were received into a project filing system database.

3. A search of the project filing system database showed a total of 4,757 pieces of correspondence were submitted during the formal DEIS comment period, including comments received at the public hearings prior to the FEIS. Of these 4,757 pieces of correspondence, 204 included a return address located in Washington, D.C.

4. A search of the project filing system database showed a total of 786 pieces of correspondence were submitted during the formal FEIS comment period. Of these 786 pieces of correspondence, 30 included a return address in Washington, D.C.

5. Comments on the DEIS and FEIS were submitted in several ways, via the project website, by mail, public hearing comment cards, fax, and e-mail. The great majority of comments (approximately 90%) included the author's address, which was recorded in the database along with the author's name and the comment(s).

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of March, 2007.


Michele L. Jones

CERTIFICATE OF SERVICE

I hereby certify that, on March 15, 2007, I caused to be served a true and accurate copy of the foregoing FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER, AND EXHIBITS by filing through this Court's electronic filing system and by direct electronic transmission upon:

Hope Madeline Babcock                          Attorney for Plaintiffs
babcock@law.georgetown.edu

Erik B. Bluemel                                Attorney for Plaintiffs
ebb25@law.georgetown.edu

Margaret N. Strand                             Attorney for Defendants Metropolitan
mstrand@venable.com                            Washington Council of Governments,
                                               Jay Fishette, National Capital Region
                                               Transportation Planning Board, and
                                               Michael Knapp

and by direct electronic transmission upon:

Robert E. Yuhnke                               Attorney for Plaintiffs
bob.yuhnke@prodigy.net

Linda D. Strozyk                               Attorney for State of Maryland
lstrozyk@sha.state.md.us


                                        /s/ Cynthia J.Morris
                                       Cynthia J. Morris