MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CYNTHIA J. MORRIS (D.C. Bar No. 358776)
SCOTT J. JORDAN
Environmental Defense Section
WELLS D. BURGESS ( D.C. Bar No. 477331)
RACHEL DOUGAN
Natural Resources Section
STACY STOLLER
Law and Policy Section
P.O. Box 23986
Washington, DC  20026-3986
(202) 616-7554 (Morris)
E-mail: C.J.Morris@usdoj.gov
(202) 305-0445 (Burgess)
E-mail: Wells.Burgess@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Environmental Defense and Sierra Club, | ) | |
| Plaintiffs, | ) | Civil Action No. 06-2176 |
| v. | ) | |
|  | ) | MOTION TO DISMISS |
| United States Department of Transportation, | ) | |
| et. al., | ) | |
| Defendants. | ) | |

Pursuant to Rules 12(b)(1) and  12 (b) (6), Fed. R. Civ. P., the United States Department

of Transportation ("DOT"), Mary E. Peters, in her official capacity as Secretary of the DOT, the

Federal Highway Administration ("FHWA"), and J. Richard Capka, in his official capacity as

FHWA Administrator (collectively, "the Federal Defendants") hereby move this Court for an

order dismissing Counts 14 and 15 of the complaint on the alternative grounds that the Court

lacks subject matter jurisdiction to adjudicate said Counts and that said Counts fail to state a

claim upon which relief can be granted.   A supporting memorandum and proposed order of

dismissal are attached.

Respectfully submitted this 27th  day of April, 2007.

<div style="margin-left:40%">

MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CYNTHIA J. MORRIS (D.C. Bar No. 358776)
SCOTT J. JORDAN
Environmental Defense Section
WELLS D. BURGESS
RACHEL DOUGAN
Natural Resources Section
STACY STOLLER
Law and Policy Section
P.O. Box 3986
Washington, DC  20026-3986
(202) 616-7554 (Morris)
E-mail: C.J.Morris@usdoj.gov
(202) 305-0445 (Burgess)
E-mail: Wells.Burgess@usdoj.gov

By:    /s/ Wells D. Burgess
       Wells D. Burgess

</div>

MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CYNTHIA J. MORRIS (D.C. Bar No. 358776)
SCOTT J. JORDAN
Environmental Defense Section
WELLS D. BURGESS ( D.C. Bar No. 477331)
RACHEL DOUGAN
Natural Resources Section
STACY STOLLER
Law and Policy Section
P.O. Box 23986
Washington, DC  20026-3986
(202) 616-7554 (Morris)
E-mail: C.J.Morris@usdoj.gov
(202) 305-0445 (Burgess)
E-mail: Wells.Burgess@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Environmental Defense and Sierra Club, | ) | |
| Plaintiffs, | ) | Civil Action No. 06-2176 |
| v. | ) | |
| United States Department of Transportation, et. al., | ) | |
| Defendants. | ) | |

FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COUNTS 14 AND 15 OF THE COMPLAINT
PURSUANT TO RULES 12(b)(1) and 12(b)(6), FED. R. CIV. P.

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

THE CLAIMS TO BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  The Court is Without Subject Matter Jurisdiction to Adjudicate Counts 14 and 15 . 11

        1. Judicial Review of Counts 14 and 15 is Precluded by Statute . . . . . . . . . . . . 11

        2.  The Challenged Action is Committed by Law to Agency Discretion . . . . . . 16

    B.  Section 134 does not Create an Implied Private Right of Action . . . . . . . . . . . . . . 18

    C.  There is no Duty to Prepare an MIS in any Event . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES:

### FEDERAL CASES:

*Alexander v. Sandoval, 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Association of Civilian Technicians, Inc. v. Federal Labor Relations Authority,
283 F.3d 339 ( D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Atlanta Coalition v. Atlanta Regional Commission, 599 F.2d 1333 (5th Cir. 1979) . . . . . . . . 4, 5

Baltimore Gas and Elec. Co. v. F.E.R.C., 252 F.3d 456 ( D.C. Cir. 2001) . . . . . . . . . . . . . . . . 17

*Block v. Community Nutrition Institute, 467 U.S. 340 (1984) . . . . . . . . . . . . . . . . . . . . . 11, 14

California v. Sierra Club, 451 U.S. 287 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cannon v. University of Chicago, 441 U.S. 677 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 ( 1971 ) . . . . . . . . . . . . . . . . . . . . . . 17

*Claybrook v. Slater, 111 F.3d 904 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conley v. Gibson, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cornejo-Barreto v. Siefert, 379 F.3d 1075 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cort v. Ash, 422 U.S. 66 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 19

*Harrison v. Bowen, 815 F.2d 1505 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Heckler v. Chaney, 470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lundeen v. Mineta, 291 F.3d 300 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19, 20

Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1 (1981) . . . . . 19

Mistick PBT v. Chao, 440 F.3d 503 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

National Wildlife Federation v. Gorsuch, 693 F.2d 156 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . 18

Pennhurst State School and Hospital v. Halderman, 451 U.S. 1 (1981) . . . . . . . . . . . . . . . . . . 17

Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151 (D.C. Cir. 2006) . . . . . . . . . . . . . . 11

*Sierra Club v. Pena, 915 F. Supp. 1381 ( N.D. Ohio 1996) . . . . . . . . . . . . . . . . . . . . . . . . 19-21

Sierra Club v. Slater, 120 F.3d 623 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979) . . . . . . . . . . . . . . . . . . . 19

Trudeau v. FTC, 456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

In re Vitamins Antitrust Litigation, 270 F. Supp. 2d 15 ( D.D.C. 2003) . . . . . . . . . . . . . . . . . . . 2

Whitacre v. Davey, 890 F.2d 1168 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL STATUTES:**

5 U.S.C. 701(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 11

5 U.S.C. 701(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 11, 16, 17

23 U.S.C. 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

23 U.S.C. 101(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23 U.S.C. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23 U.S.C. 106(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 U.S.C. 120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23 U.S.C. 121(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 U.S.C. 122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23 U.S.C. 134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

23 U.S.C. 134(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

23 U.S.C. 134(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

23 U.S.C. 134(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23 U.S.C. 134(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

23 U.S.C. 134(i)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

23 U.S.C. 134(j)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

23 U.S.C. 134(j)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

23 U.S.C. 134(j)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10

23 U.S.C. 134(k)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23 U.S.C. 135 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 14

23 U.S.C. 135(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_

23 U.S.C. 135(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_

23 U.S.C. 135(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

23 U.S.C. 135(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 U.S.C. 135(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

23 U.S.C. 135(g)(4)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 U.S.C. 135(g)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

23 U.S.C. 145(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

28 U.S.C. 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Intermodal Surface Transportation Efficiency Act (ISTEA),
       Pub. L. 102-240 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Safe, Accountable, Flexible and Efficient Transportation Equity Act: A Legacy for Users
(SAFETEA-LU),
       Pub. L. 109-59 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Transportation Equity Act for the 21st Century (TEA-21),
       Pub. L. 105-178 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

**FEDERAL REGULATIONS**: [ bracketed citations are to the regulations  revised effective March, 16, 2007]

23 CFR Part 400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

23 CFR Part 450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21, 23

23 CFR 450.218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 CFR 450.220 [ 23 CFR 450.218] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 CFR 450.318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21, 22

23 CFR 450.318(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

23 CFR 450.318(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

23 CFR 450.328(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23 CFR 450.332(d) [ 23 CFR 450.220(a); 23 CFR 450.330(d)] . . . . . . . . . . . . . . . . . . . 6

23 CFR 450.334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23 CFR Part 500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

49 CFR Part 613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21, 23

**Legislative Materials**:

H.R. Conf. Rep. 105-550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL REGISTER**

58 Fed. Reg. 12064 (Mar. 2, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

58 Fed. Reg. 58040 (Oct. 28, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

58 Fed. Reg. 58064 (October 28, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

65 Fed. Reg. 33922 (May 25, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

67 Fed. Reg. 59219 (September 20, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

72 Fed. Reg. 7224 (Feb. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

**OTHER AUTHORITIES**:

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.9

Fed. R. Civ. P. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## PRELIMINARY STATEMENT

There are pending before this Court the opposed motion of the federal defendants to transfer this action to the District of Maryland, Southern Division, for consolidation with an identical challenge to the Inter-County Connector project, and the opposed motion of the Metropolitan Washington Council of Governments, the  National Capital Region Transportation Planning Board, and their respective chairpersons (collectively, the "MPO defendants") to dismiss Counts 9 - 14 and 37 of this action.  The claims against the MPO defendants, and the virtually identical Counts 14 and 15 that are the subject of this, the federal defendants' motion to dismiss, are discrete claims challenging the metropolitan and state planning processes.  These processes are not at issue in the remainder, which constitute the bulk, of plaintiffs' claims, which challenge the project decision itself.  See Complaint, passim.  In Federal Defendants' Reply Memorandum in Support of Motion to Transfer, federal defendants advised the Court that were the Court to determine to retain jurisdiction over the claims against the MPO defendants, the federal defendants were willing to have those claims severed from the remaining claims, and the remaining claims could then be transferred for consolidation with the Maryland action, as the interests of justice require.  Reply Memorandum, Docket # 18, at p. 5 fn. 4.  Federal Defendants advised the Court at the same time that it would be filing this motion to dismiss Counts 14 and 15, which are based on the identical factual and legal allegations made against the MPO defendants.

By now moving to dismiss Counts 14 and 15, federal defendants do not waive any of their arguments supporting transfer of this entire action to the District of Maryland.  However, because Counts 14 and 15 are inextricably connected with the claims sought to be dismissed by

the MPO defendants, federal defendants believe that it is in the interests of judicial efficiency to

go forward with their motion.  In doing so they make the same suggestion to the Court regarding

severance with respect to Counts 14 and 15 that they previously made with respect to the claims

against the MPO defendants: to wit, that in the event that the Court were to determine to retain

jurisdiction over Counts 14 and 15, these claims may, along with the claims against the MPO

defendants, be severed from the remaining claims and those remaining claims be transferred for

consolidation with the Maryland action in the interests of justice.  Fed. R. Civ. P. 21; 28 U.S.C.

1404(a);  In re Vitamins Antitrust Litigation, 270 F. Supp. 2d 15, 35 -38 ( D.D.C. 2003).

## INTRODUCTION

Plaintiffs, environmental organizations who are active nationally regarding traffic and

growth issues, have filed a 105-page complaint alleging that the United States Department of

Transportation ("DOT") through its component the Federal Highway Administration ("FHWA" )

has committed manifold violations of federal law in connection with its approval on May 29,

2006 of the Inter-County Connector Project (the "ICC" or "Project"), a combined highway, mass

transit and recreational trail project located in Montgomery and Prince George's Counties,

Maryland.  Although the bulk of these claims are made under the National Environmental Policy

Act and the Clean Air Act, plaintiffs have sought to augment their pleading with claims under

the Federal-Aid Highways Act, as amended, which is codified at 23 U.S.C. 101 et seq.   Certain

of these latter are discrete claims born out of plaintiffs' unhappiness with the metropolitan and

state transportation planning processes due solely to the inclusion of the ICC within those plans.

Regional transportation planning in the greater Washington, D.C. area is undertaken by

the National Capital Region Transportation Planning Board, the metropolitan planning

organization for the area; the Board is an arm of the Metropolitan Washington Council of Governments.[1]  Statewide transportation planning in Maryland is undertaken by the State of Maryland through the Maryland Department of Transportation ("MDOT"), the Maryland State Highway Administration, and the Maryland Transit Administration.

The ICC is one of many projects contained in the MPO's Transportation Improvement Program for the National Capital Region ("Metro TIP"), which became a part of the Maryland Transportation Improvement Program ("State TIP"), which was approved by FHWA and the Federal Transit Administration (another component of the U.S. Department of Transportation) for consistency with the federally mandated transportation planning process.  Plaintiffs allege that the MPO violated the Federal-Aid Highways Act, specifically 23 U.S.C. 134, by including the ICC in the Metro TIP. Complaint, Counts 9 - 13.  Invoking the jurisdiction of this Court under the Administrative Procedure Act ("APA"),  plaintiffs allege that the federal defendants, by approving the State TIP, violated 23 U.S.C. 134 and 135.   Complaint, Counts 14 and 15.

As set forth below, judicial consideration of these claims is expressly precluded by the Federal-Aid Highways Act ("FAHA"), specifically 23 U.S.C. 134(h) and 23 U.S.C. 135(d), and these provisions mandate dismissal of Counts 14 and 15 under the Administrative Procedure Act ("APA"), 5 U.S.C. 701(a)(1).  In the event that the Court were to find the FAHA preclusion provisions inapplicable, federal defendants will demonstrate that no APA review is available under 5 U.S.C. 701(a)(2), because the hortatory language relied on by plaintiffs provides no justiciable standard.  Finally, no private right of action to pursue these claims can be implied

---

[1] Both of these organizations, and their respective chairpersons, are named as defendants in this action.  Most of the allegations are directed against the functions of the Planning Board, which will be referred to as the "MPO."

3

from FAHA, and Congress has eliminated the study requirement alleged to be missing from the process.

## BACKGROUND[2]

The Federal-Aid Highways Act, as amended, provides the statutory basis for the Federal-Aid Highways Program ("FAHP"), a grant program for the construction and maintenance of highway systems to provide for local and interstate commerce, provide for the national defense, and increase safety. 23 U.S.C. 101(b). The FAHP requires Congressional enactment of multi-year authorization acts and is administered by FHWA. The most recent authorization act is the Safe, Accountable, Flexible and Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), which was enacted on August 10, 2005, and authorizes a total of $193 billion in funding for the FAHP over a 5 year period. The FAHP is a federally-assisted State program that reimburses costs incurred by states based on various statutory apportionment formulas, as well as through discretionary grant programs. 23 U.S.C. 101, 104. Federal funds participate in a percentage of costs of projects selected by the States, 23 U.S.C. 120, and may also be used for bond-financing. 23 U.S.C. 122 . The FAHP includes numerous conditions and requirements that must be satisfied before the FHWA can enter into a contractual obligation to fund a project.

Among the FAHP's conditions are detailed requirements for both short and long range metropolitan and statewide transportation planning processes. 23 U.S.C. 134 and 135. Among these, since 1962, are detailed requirements for continuing, cooperative, and comprehensive transportation planning processes for urbanized metropolitan areas with populations over 50,000.

---

[2] A thorough and informative description of the regional transportation process and the federal role in that process is set forth in <u>Atlanta Coalition v. Atlanta Regional Commission</u>, 599 F.2d 1333 (5th Cir. 1979).

4

See Pub.L 87-866, 9(a), Oct. 23, 1962 and 23 U.S.C. 134.

The FAHP requires the development of both short range TIPs (covering at least 4 years) and long range transportation plans (covering at least 20 years) for each metropolitan area. In multi-state urbanized areas such as the Washington, D.C. region, the Governors are encouraged to provide coordinated transportation planning for the entire metropolitan area. 23 U.S.C. 134(f)(1). Maryland, Virginia, the District of Columbia, and local government officials have done so through the designation of the National Capital Region Transportation Planning Board as the Metropolitan Planning Organization for the Washington, D.C. region. Each year, the MPO performs a new round of the required planning process through a year-long series of meetings interspersed with studies. The planning begins with a call for new projects to be submitted by each transportation agency, and concludes near the end of the year after adopting a new or amending an existing 20 year financially constrained long range plan ("Metro CLRP") and a Metro TIP covering all significant transportation projects in the region. FHWA does not approve the Metro CLRP or the Metro TIP but does review whether the metropolitan transportation planning process is being carried out in a manner consistent with the statute and implementing regulations. See 23 U.S.C. 134(k)(5) and 23 CFR 450.334.[3]

The FAHP includes similar requirements for continuing, cooperative, and comprehensive statewide planning processes resulting in long range statewide transportation plans (covering at least 20 years) and short range State TIPs (covering at least 4 years). 23 U.S.C. 135. The FAHP

_____

[3] This nuance is not necessary for the disposition of the federal defendants' motion, but conveys a significant point regarding the federal role in the planning process. Federal review goes to the process and not to the "substantive aspects of the plans." See <u>Atlanta Coalition</u>, 599 F. 2d at 1340.

requires the metropolitan and statewide transportation plans to be consistent. 23 U.S.C.

135(g)(4)(D).   FHWA and FTA review the State TIP at least every four years for compliance

with the implementing regulations. 23 U.S.C. 135(g), 23 CFR 450.220 $^{4/}$ [ 23 CFR  450.218], and

450.328(a).  Joint FHWA/FTA regulations implementing the metropolitan and statewide

transportation planning processes are set forth in 23 CFR 450, and 49 CFR 613, which were

recently amended as noted below.  Individual highway projects in metropolitan planning areas

must be included in both the Metro TIP and State TIP to be eligible for federal funding. 23 CFR

450.332(d) [ 23 CFR 450.220(a) and 450.330(d)].  Inclusion of a project in a transportation plan,

State TIP or Metro TIP is not a federal funding obligation for that project, nor is FHWA's

approval of the State TIP planning process a funding obligation for the projects therein.

The States must select the projects they propose for federal funding from these plans. 23

U.S.C. 134(j)(5) & 135(g).  However, the Federal government is not obligated to fund a

proposed highway project until the FHWA approves the project level National Environmental

Policy Act ("NEPA") analysis and other environmental documentation in a Record of Decision

for each individual project, and subsequently approves Plans, Specifications, and Estimates

("PS&E") for the project and enters into a project agreement with the State. 23 U.S.C. 106(a) &

121(b).

The ICC project was added to the MPO's Metro CLRP and Metro TIP in 2003, and has

been included in all subsequent regional plans approved by MPO.  MDOT incorporated the FY

2006-2011 Metro TIP for the National Capital region into its FY 2006 State TIP, and transmitted

---

$^{4/}$  On February 14 of this year, FHWA and FTA promulgated final revisions to their planning
regulations, effective March 16, 2007.  72 Fed. Reg. 7224 (Feb. 14, 2007).  Citations to the new
regulations, where different from the prior codification, are given in brackets.

the FY 2006 State TIP to FHWA and the Federal Transit Administration ("FTA") for joint

approval.  On January 27, 2006, FHWA and FTA approved the Maryland State TIP determining

that both the State TIP and the Metro TIP satisfied the requirements of 23 U.S.C. 134 and 135.

### THE CLAIMS TO BE DISMISSED

The claims that federal defendants seek to have dismissed are contained in Counts 14 and

15 of the Complaint.

Count 14 asserts that the federal defendants violated 23 U.S.C. 135(g)(7) by approving

the State TIP which incorporated the Metro TIP, because "the [MPO's] planning process did not

ensure compliance with the national planning objectives required by 23 U.S.C. 134(a), (c)."

Complaint para. 359, and see paras. 355-58.   Count 15 asserts that because of the violations by

the MPO set forth in Counts 9 - 14, the MPO has violated the APA (Complaint para. 360); that

"as a result,"[5]  federal approval of the ICC project must be set aside because the project does not

_____

[5] As this description of Counts 14 and 15 makes clear, plaintiffs' assertions against the federal
defendants in those Counts rest on the alleged defects in the planning process asserted against
the MPO.  Those allegations are contained in Counts 9 - 13 of the complaint.  In Counts 9
through 12, plaintiffs allege that the MPO "failed to accomplish" certain "national transportation
objectives" set forth in 23 U.S.C. 134, to wit, "meeting the mobility needs of people and freight"
( Count 9); "fostering regional economic growth and development" ( Count 10); "minimizing
transportation related fuel consumption" ( Count 11), and "minimizing air pollution" ( Count
12).  Count 13 alleges that the MPO violated an FHWA regulation, 23 CFR 450.318(a), by
approving the TIP and CLRP without undertaking the "major investment study," called for by
the regulation.  Count 14 states no claims against the MPO, but as above indicated predicates
federal liability on the alleged defects in the MPO planning process. The  MPO defendants have
moved to dismiss these claims against them.  See Motion to Dismiss of Defendants Metropolitan
Washington Council of Governments, et al. ("MPO Motion") and Memorandum in Support of
Motion to Dismiss ("MPO Memorandum") filed by said defendants on March 8, 2007. Docket #
13.  Inasmuch as federal liability is predicated on these allegations, federal defendants
respectfully ask this Court to read the MPO memorandum pertaining to Counts 9 through 13 in
support of federal defendants' motion to dismiss Counts 14 and 15.  The MPO defendants have
also sought dismissal of Count 37, which asserts claims regarding their compliance with the
Clean Air Act in connection with the planning processes.  See Complaint paras. 585-588, and see
MPO motion and MPO Memorandum at pp. 20-27.   Federal defendants support dismissal of

come from a properly approved Metro TIP or Metro CLRP, citing 23 U.S.C. 134(j)(5); and that

federal approval of the State TIP must also be set aside because the State's planning process was

not consistent with 23 U.S.C. 134.[g]  Complaint paras. 360-361. The Court has no jurisdiction

over these claims, and they fail to state a claim upon which relief can be granted.

Section 134(h) of Title 23, pertaining to the metropolitan planning process, and its

companion section 135(d), pertaining to statewide planning, expressly insulate those planning

processes from judicial review under the APA with respect to any allegation that environmental,

economic, social, and transportation related factors were not considered in the process.  See 23

U.S.C. 134(h); 23 U.S.C. 135(d).   Because the waiver of sovereign immunity necessary to

establish jurisdiction over these claims under the APA does not extend to situations where the

statutes upon which plaintiffs' claims are based preclude judicial review, they must be

dismissed. See 5 U.S.C. 701(a)(1).   Even assuming for the sake of argument that these

dispositive provisions were not applicable, the hortatory language upon which plaintiffs base

their claims provides no standard for the Court to measure the alleged violations, and plaintiffs'

claims must alternatively be dismissed under 5 U.S.C. 701(a)(2).  Furthermore, under established

precedent no implied right of action can be derived from the Federal-Aid Highways Act to

support an action against the federal officials to enforce the Act.  Finally, the alleged failure by

the MPO to perform an investment study as part of the planning process is not actionable

these claims against the MPO.   It is unclear from the complaint whether any separate facts are
alleged as the predicate to the liability asserted against the federal defendants in this Count.  For
that reason, federal defendants will defer seeking dismissal of this Count against them at this
time.

[g] Statewide transportation planning is governed by 23 U.S.C. 135, not 134, but plaintiffs'
allegations regarding the alleged defects in the State planning process refer back to 23 U.S.C.
134(a) in any event.  See 23 U.S.C.  135(a) and compare 23 U.S.C. 134(c).

because Congress had terminated the requirement.

## ARGUMENT

Federal defendants seek dismissal of Counts 14 and 15 both on the ground that the Court lacks jurisdiction over these claims, Fed. R. Civ. P. 12(b)(1), and on the ground that these Counts fail to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), to the extent the Court were to find jurisdiction.  See Trudeau v. Federal Trade Commission, 456 F.3d 178, 187 ( D.C. Cir. 2006).  In considering claims dismissed pursuant to Rule 12(b)(6), the complaint's factual allegations are treated as true and plaintiff granted the benefit of all reasonable inferences from the facts alleged. Trudeau, 456 F.3d at 193.  The factual and jurisdictional allegations supporting the legal claims asserted above are set forth in the following paragraphs of the complaint: 5, 6, 9, 10, 28 - 31, 48 - 71, 434 - 437.  By accepting these allegations as true for the purposes of this motion, federal defendants make no concession relating to the merits of the claims.  A motion to dismiss under Rule 12(b)(6) should be granted if the plaintiffs' claims cannot provide a legally sufficient theory upon which the Court might grant relief.   See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Trudeau, 456 F.3d at 193.   In examining this question on a motion to dismiss, the Court is not bound by plaintiffs' characterization of the legal meaning of a statute.  See Whitacre v. Davey,  890 F.2d 1168 ( D.C. Cir. 1989) at n. 1.

Plaintiffs found their allegations of federal liability on 23 U.S.C. 134(a) and (c), and by implication 23 U.S.C.  135(a).  Section 134 of Title 23 provides as follows:

(a) Policy.--It is in the national interest to--
        (1) encourage and promote the safe and efficient management, operation, and development of surface transportation systems that will serve the mobility needs of people and freight and foster economic growth and development within and between States and urbanized areas, while minimizing transportation-related fuel consumption and air pollution

9

through metropolitan and statewide transportation planning processes identified in this chapter; and

(2) encourage the continued improvement and evolution of the metropolitan and statewide transportation planning processes by metropolitan planning organizations, State departments of transportation, and public transit operators as guided by the planning factors identified in subsection (h) and section 135(d).

Section 134(c) recites as follows:

(c) General requirements.--

(1) Development of long-range plans and TIPs.--To accomplish the objectives in subsection (a), metropolitan planning organizations designated under subsection (d), in cooperation with the State and public transportation operators, shall develop long-range transportation plans and transportation improvement programs for metropolitan planning areas of the State.

(2) Contents.--The plans and TIPs for each metropolitan area shall provide for the development and integrated management and operation of transportation systems and facilities (including accessible pedestrian walkways and bicycle transportation facilities) that will function as an intermodal transportation system for the metropolitan planning area and as an integral part of an intermodal transportation system for the State and the United States.

(3) Process of development.--The process for developing the plans and TIPs shall provide for consideration of all modes of transportation and shall be continuing, cooperative, and comprehensive to the degree appropriate, based on the complexity of the transportation problems to be addressed.

Section 135(a) of Title 23 mirrors section 134(c) but applies to the development of statewide plans.[7/]

---

[7/]  The other provisions of Title 23 relied on in plaintiffs' claims against the federal defendants involve the requirement that federally funded projects be selected by the State from an approved TIP, 23 U.S.C. 134(j)(5), and that the Secretary of Transportation make a finding that the statewide planning process is "consistent with this section [23 U.S.C. 135] and section 134." Liability under these provisions, however, is also predicated on the alleged failures to comply with the requirements of 23 U.S.C. 134(a) and (c), and in one case a regulation implementing Section 134.   See Counts 9 - 13.

**A.  The Court is Without Subject Matter Jurisdiction to Adjudicate Counts 14 and 15.**

Because the Federal-Aid Highways Act ("FAHA") creates no express private right of action, plaintiffs' causes of action necessarily rely on the APA to establish a waiver of sovereign immunity by the United States, which is a jurisdictional question.  Trudeau v. FTC, 456 F.3d 178, 185 ( D.C. Cir. 2006), citing FDIC v. Meyer, 510 U.S. 471,475 ( 1994) . See Complaint paras. 5, 6, 355-362.   The APA, however, expressly provides that its general review provisions do not apply where "statutes preclude judicial review."  5 U.S.C. 701(a)(1). See Association of Civilian Technicians, Inc. v. Federal Labor Relations Authority, 283 F.3d 339 ( D.C. Cir. 2002). Furthermore,  it precludes review when the "agency action is committed to agency discretion by law."  5 U.S.C. 701 (a)(2).  Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151 (D.C. Cir. 2006).  Both circumstances are present here.

**1. Judicial Review of Counts 14 and 15 is Precluded by Statute**

Invocation of the preclusion provision of 5 U.S.C. 701(a)(1) requires a demonstration of clear and convincing evidence of congressional intent to restrict access to the courts.  Mistick PBT v. Chao, 440 F.3d 503, 509 (D.C. Cir. 2006).   Here, the Court need look no further than the express provisions of sections 134 and 135 of Title 23 to find that "specific language ... that is a reliable indicator of congressional intent" to preclude judicial review.  Block v. Community Nutrition Institute, 467 U.S. 340, 349 ( 1984).  The metropolitan planning process is governed by 23 U.S.C. 134; the state process by 23 U.S.C. 135.  Plaintiffs' complaint is founded on the inclusion of the ICC project in the plans produced by these processes, and alleges that the processes failed to take account of various transportation, economic, energy and environmental factors in those processes, resulting in the wrongful inclusion of the ICC in the relevant CLRPs

11

and TIPs . See Complaint, Counts 9 - 15.

Section 134(h) of Title 23 states:

Scope of planning process.--

(1) In general.--The metropolitan planning process for a metropolitan planning area under this section shall provide for consideration of projects and strategies that will--
(A) support the economic vitality of the metropolitan area, especially by enabling global competitiveness, productivity, and efficiency;
(B) increase the safety of the transportation system for motorized and nonmotorized users;
(C) increase the security of the transportation system for motorized and nonmotorized users;
(D) increase the accessibility and mobility of people and for freight;
(E) protect and enhance the environment, promote energy conservation, improve the quality of life, and promote consistency between transportation improvements and State and local planned growth and economic development patterns;
(F) enhance the integration and connectivity of the transportation system, across and between modes, for people and freight;
(G) promote efficient system management and operation; and
(H) emphasize the preservation of the existing transportation system.

(2) Failure to consider factors.--The failure to consider any factor specified in paragraph (1) shall not be reviewable by any court under this title or chapter 53 of title 49, subchapter II of chapter 5 of title 5, or chapter 7 of title 5 in any matter affecting a transportation plan, a TIP, a project or strategy, or the certification of a planning process.

Section 135(d) of Title 23, applicable to statewide planning processes, is, as here relevant,

identical.[8]

_____

[8] Scope of planning process.--

(1) In general.--Each State shall carry out a statewide transportation planning process that provides for consideration and implementation of projects, strategies, and services that will--
(A) support the economic vitality of the United States, the States, nonmetropolitan areas, and metropolitan areas, especially by enabling global competitiveness, productivity, and efficiency;
(B) increase the safety of the transportation system for motorized and nonmotorized users;
(C) increase the security of the transportation system for motorized and nonmotorized users;
(D) increase the accessibility and mobility of people and freight;
(E) protect and enhance the environment, promote energy conservation, improve the quality of

12

Extraordinarily, plaintiffs' complaint attempts to create a parallel cause of action involving the same factors by referencing the initial policy and general guidance provisions of the same statute in which some of the same issues are described generally as "objectives." See Complaint Counts 9 - 12; and see 23 U.S.C. 134(a) and (c); 135(a).    The Court should reject this attempt to circumvent Congressional intent.

By sections 134(h) and 135(d) of Title 23, Congress has precluded from judicial review the very process by which "projects" are "considered" for inclusion in metropolitan and state transportation plans. Id.  The decisional process affected by the preclusion encompasses all "consideration of projects and strategies," and the list of "factors," as to which review of "failure to consider" is precluded, is global, comprising:  economic vitality; safety; security; accessibility and mobility for people and freight; protection of the environment; energy conservation; consistency with local growth and development planning; the integration and connectivity of the transportation system; efficiency of management; and the preservation of the existing transportation system. Id.   They necessarily encompass, both in fact and as a matter of simple logic, the elements that are mentioned as "objectives" in the policy portion of the statute. See 23 U.S.C. 134(a).   That federal agencies were to have the benefit of this preclusion is

---

life, and promote consistency between transportation improvements and State and local planned growth and economic development patterns;
(F) enhance the integration and connectivity of the transportation system, across and between modes throughout the State, for people and freight;
(G) promote efficient system management and operation; and
(H) emphasize the preservation of the existing transportation system.

(2) Failure to consider factors.--The failure to consider any factor specified in paragraph (1) shall not be reviewable by any court under this title or chapter 53 of title 49, subchapter II of chapter 5 of title 5, or chapter 7 of title 5 in any matter affecting a statewide transportation plan, the transportation improvement program, a project or strategy, or the certification of a planning process.

evident from the preclusion's specific reference to the APA.  See 23 U.S.C. 134(h)(2); 23 U.S.C.

135(d)(2).  Furthermore, the scope of the preclusion encompasses all aspects of the federal role

in the planning process since it extends to " any matter affecting a [long range] transportation

plan, a TIP, a project or strategy, or the certification of a planning process."  Id. [9]  In short, there

is neither jurisdiction in this Court nor any basis in law for plaintiffs' suit under 23 U.S.C. 134(a)

and (c) or 135(a) to challenge the FHWA's approval of the MPO and State planning processes,

FHWA's ultimate decision to approve the ICC project, or any other aspect of its involvement in

any matter affecting the ICC, or the planning processes which led to it.   See Association of

Civilian Technicians, 283 F.3d at 342-344.

That the intent to preclude judicial review is "fairly discernible in the statutory scheme,"

Block, 467 U.S. at 351, is equally clear.  Not only are the factors an exhaustive and

comprehensive list, as pointed out above, but the headings of the sections, "scope of the planning

process," see 23 U.S.C. 134(h) and 135(d), can mean nothing but that Congress intended these

provisions to address all aspects of planning covered by sections 134 and 135 of Title 23.  The

legislative history confirms this.  In streamlining earlier designations of a larger number of

specific factors into the "seven general factors to be considered in the planning process,"

Congress made clear that the preclusive provisions applicable to both metropolitan and statewide

planning processes were comprehensive:

---

[9] Plaintiffs could not sustain the pleading artifice of ignoring the preclusive provisions.  Their
complaint at paragraph 336, without citing 23 U.S.C  134(h),  alleges that SAFETEA-LU
requires the MPO to approve transportation plans and programs only after due consideration of
"a variety of national transportation planning factors." (Emphasis added).  As above indicated,
these factors are specified in 23 U.S.C.  134(h)(1), and are precluded from judicial review by
134(h)(2).

14

> The language clarifies that the failure to consider any specific factor in
> formulating plans, projects, programs, strategies and certification of planning
> processes is not reviewable in court.

H.R. Conf. Rep. 105-550, Pub. L. 105-178, Transportation Equity Act for the 21st Century (

May 22, 1998) at 440 ( Metropolitan planning), repeated at 441 ( Statewide planning).

Thus, the statute's "language, structure and legislative history" all point to preclusion of

judicial review.  Lundeen v. Mineta, 291 F.3d 300, 305 (5th Cir. 2002).   The Lundeen case is

illustrative.  There,  a bicyclist sought to claim that a provision requiring that transportation plans

and projects address bicycling concerns, enacted in FAHA in a chapter *separate* from that

addressing the planning process, was not subject to the preclusive provisions of 23 U.S.C.

134(h), then 134(f).  Examining the statutory text, the structure of the statute and the legislative

history, the Court soundly rejected the notion that the bicycling provision "on its own establishes

a new consideration requirement that is judicially reviewable." 291 F.3d at 307.   And elsewhere:

> The legislative history thus confirms the impression given by the text. By
> enacting TEA-21, Congress did not intend to create a judicially reviewable,
> bicycle-safety-design criterion; rather, it anticipated that the failure to consider
> specific factors in planning a particular transportation project - even bicycle
> safety  - would not be judicially reviewable.

291 F. 3d at 310.   Plaintiffs here are attempting, with even less of a statutory ledge to grab hold

of than had Lundeen, to circumvent clear statutory intent to preclude from judicial review the

consideration of any and all of the listed factors  in the "consideration of projects and strategies"

in planning.  23 U.S.C.134(h); 135(d).   They should not be allowed to do so.

Moreover, this preclusion is not only applicable to plaintiffs' attempts to construct a

cause of action based on the alleged failure of the plans to "accomplish objectives," see Counts 9

- 12, but also is applicable to their contention that the MPO failed to undertake the "major

investment study" ("MIS") allegedly required by 23 CFR 450.318.  First, this regulation was

adopted to implement section 134 of Title 23. See 58 Fed. Reg. 12064, 12066 (Mar. 2, 1993); 58

Fed. Reg. 58040, 58055 (Oct. 28, 1993).  Second, an examination of the regulation makes clear

that the MIS, assuming *arguendo* that it was an operative requirement at all during the period in

question,[10] was an analytical *planning* tool ( "major investment (corridor or subarea) studies

shall be undertaken to develop or refine the plan and lead to decisions by the MPO").  23 CFR

450.318(a).  Thus it was part of the "planning process" which is immunized from judicial review

by 23 U.S.C. 134(h).  Indeed, the MIS analysis was to consider the very factors that are indicated

in the preclusive sections to be unreviewable ( "The analysis shall consider ... such factors as

mobility improvements; social, economic, and environmental effects; safety; operating

efficiencies; land use and economic development; financing; and energy consumption.") 23 CFR

450.318(c).  It is inconceivable that Congress, having broadly precluded the planning decisions

from judicial review, would have contemplated that they could be impeached for failure to utilize

a regulatory planning tool designed to assist the planners in evaluating the precluded "factors."

See Harrison v. Bowen, 815 F.2d 1505, 1517 ( D.C. Cir. 1987) ( "[A]n agency cannot create

through its implementing regulations a right of review withheld by the underlying statute." )  The

claims set forth in Counts 14 and 15 must be dismissed.

## 2. The Challenged Action is Committed by Law to Agency Discretion

The second exemption from reviewability, set forth in 5 U.S.C. 701(a) (2), is "applicable

in those rare instances where statutes are drawn in such broad terms that in a given case there is

---

[10] As the Government demonstrates below, Congress had in fact eliminated the MIS requirement
during the period in question.  See pp. 21-23 *infra.*

no law to apply." <u>Chao</u>, 440 F. 3d at 509, citing <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 410 ( 1971 ).  This is such an instance.

An agency decision is considered "committed to agency discretion by law" under 5 U.S.C. 701(a)(2) "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion." <u>Heckler v. Chaney</u>, 470 U.S. 821, 830 (1985).  Plaintiffs base their allegations of liability on 23 U.S.C. 134(a) and (c).  23 U.S.C. 134(a) is a statement of legislative policy, reciting that it is "in the national interest" to "encourage and promote" the described general transportation goals through the metropolitan and statewide planning processes described in the chapter.  This is merely a statement of policy and "a policy represents neither a standard nor a rule." <u>Cornejo-Barreto v. Siefert</u>, 379 F.3d 1075, 1088 (9th Cir. 2004).   Section 134(c), and its companion Section 135(a) applicable to statewide planning, simply recite that the policy goals will be implemented through the development of plans, together with the most general policy guidance regarding the plans' content and development process.  The words "to accomplish the objectives" in 23 U.S.C. 134(c) (and see 23 U.S.C. 135(a)), upon which plaintiffs hang their entire case, see Complaint para. 334,  cannot be read as a judicially enforceable requirement that the plans "*shall* accomplish the objectives."  Cf. <u>Pennhurst State School and Hospital v. Halderman</u>, 451 U.S. 1, 19 (1981); and <u>cf.  Baltimore Gas and Elec. Co. v. F.E.R.C.</u>, 252 F.3d 456, 461 ( D.C. Cir. 2001) ( "If Congress had intended to cabin FERC's enforcement discretion, it could have used obligatory terms such as "must," "shall," and "will," not the wholly precatory language it employed in the act.").  Rather the phase is simply Congress's general indication regarding how in the statutory scheme the policies are to be implemented - through the designation of planning organizations, the adoption of

17

comprehensive plans by those organizations, and a comprehensive planning process. See 23 U.S.C. 134(c); 145(a).[1/]  These precatory provisions are unenforceable, see <u>National Wildlife Federation v. Gorsuch</u>, 693 F.2d 156, 178 (D.C. Cir. 1982), and do not provide a meaningful standard for the Court to adjudicate the federal defendants' decisions in this case.  See <u>Claybrook v. Slater</u>, 111 F.3d 904,  908-9 (D.C. Cir. 1997).

**B.  Section 134 does not Create an Implied Private Right of Action**.

The Court must further determine whether the plaintiffs have an implied private right of action against the individual defendants (in their official capacities) for injunctive and declaratory enforcement of 23 U.S.C. 134(a) and (c), and 23 U.S.C. 135(a).  See <u>Lundeen</u>, 291 F.3d at 311.   There is a presumption that Congress did not intend to create a private right of action, which plaintiffs have a heavy burden to overcome. <u>Id</u>.   Plaintiffs cannot discharge that burden.                   The <u>Cort v. Ash</u> test requires that the Court consider: first, whether the plaintiffs are members of a class for whose especial benefit the statute was enacted; second, whether there is  any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; third, whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiffs; and fourth, whether the cause of action one involving state law so that it would be inappropriate to infer a cause of action based solely on federal law.  422 U.S.  66, 78 (1975).   The Court need address "the third and fourth factors of the <u>Cort</u> test only 'if the first two factors give indication of congressional intent to

_____

[1/] Indeed, the only arguably "mandatory" aspect of these provisions is the direction to develop the plans in the first instance.   See 23 U.S.C. 134(c)(1); 135(a)(1).  The provisions which mandate what the plans "shall provide for" are found in those provisions which preclude judicial review. See 23 U.S.C. 134(h)(1) and (h)(2); and see also 23 U.S.C. 135(d)(1) and (d)(2).

create the remedy.' " Sierra Club v. Pena, 915 F. Supp. 1381, 1391 ( N.D. Ohio 1996), aff'd,

Sierra Club v. Slater, 120 F.3d 623 (6th Cir. 1997), citing California v. Sierra Club, 451 U.S. 287,

298 (1981).

The Court first looks at the language of the statute itself.  Pena, 915 F. Supp. at 1390,

citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 16 (1979) and Middlesex

County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 13 (1981).  The question

"is not simply who would benefit from the act, but whether Congress intended to confer federal

rights upon those beneficiaries." Pena, 915 F. Supp at 1390, quoting California v. Sierra Club,

451 U.S. 287, 294 (1981).

Plaintiffs are conservation organizations which bring this action on behalf of themselves

and those of their members who will allegedly be injured by the project.  Complaint paras. 7, 8.

Nothing in the language of 23 U.S.C. 134(a) or (c) or 23 U.S.C. 135(a) identifies a class of

beneficiaries distinct from the general public.  Again, Lundeen is instructive.  There the Court,

considering a provision of the statute which expressly mentioned "bicyclists" as a class,

nevertheless found that they were not a class which Congress intended to especially benefit, and

no right was created under the FAHA.  291 F. 3d at 311-12.  In the sections of Title 23 upon

which plaintiffs rely,  by contrast, there is no identification of any such particular segment of the

public. See 23 U.S.C. 134(a)(c).   In short there is nothing in the statutory provisions upon which

plaintiffs rely which suggest the existence of a right in favor of or duty toward a particular class,

which must exist before a right of action can be implied.  Pena, 915 F. Supp at 1390, citing

Cannon v. University of Chicago, 441 U.S. 677, 690 n.13 (1979).

The second Cort factor - whether there is any indication of legislative intent either to

create a remedy or to deny one - is equally dispositive against plaintiffs.  On the one hand we

have an explicit intent in the statute, through the provisions of 23 U.S.C. 134(h)(2),  to *deny* a

remedy, see pp.  11-16 *supra*, and see <u>Lundeen</u>, 291 F.2d at 312.   On the other hand the details

of the metropolitan and statewide planning processes set forth in 23 U.S.C. 134(h),  (i) and (j),

and in 23 U.S.C. 135(d), (e), (f) and (g), strongly suggest a Congressional intent that the factors

of concern to plaintiffs were to be addressed in the context of a quasi-legislative metropolitan

and statewide planning process with public participation, rather than through the provision of a

private right of action.  See <u>Pena</u>, 915 F. Supp. at 1391; and see 23 U.S.C. 134(i)(5) (public

participation requirements for MPO CLRP process); 134(j)(1)(B) and (4) (public participation

requirements for MPO TIP process) ; 23 U.S.C.  135(f)(3) (public participation requirements for

State CLRP process); 23 U.S.C. 135(g)(3) (public participation requirements for State TIP

process).

The absence of a private right of action dooms not only those Counts which specifically

rely on 23 U.S.C. 134 and 135, but also Count 13, which attempts to establish liability for failure

to comply with the MIS regulation promulgated to implement section 134.  It is axiomatic that

the right to sue a federal agency for failure to comply with its regulations derives from whatever

right exists under the statute it implements, for  "language in a regulation may invoke a private

right of action that Congress through statutory text created, but it may not create a right that

Congress has not." <u>Alexander v. Sandoval</u>, 532 U.S. 275, 291 (2001).   In <u>Pena</u>, plaintiff Sierra

Club sought to invoke the provisions of 23 U.S.C. 134 to assert a number of claims, including, as

it does here, that no "major investment study" was prepared for the project.  See <u>Pena</u>, 915 F.

Supp. at 1389; and see Complaint, Count 13. The Court held that no private right of action

existed to pursue that claim, and dismissed it for failure to state a cause of action.  915 F. Supp.

at 1289-1291.[12]    That result should obtain here.

## C.  There is no Duty to Prepare an MIS in any Event

As indicated above, plaintiffs assert in Count 13 of the Complaint (numbered

paragraphs 352-54) that federal defendants violated the requirement of former 23 CFR 450.318

by approving the planning processes of the MPO's TIP and CLRP that contained the ICC project

without first requiring the MPO to perform and consider an MIS of the ICC.  Plaintiffs are

wrong.  As described below, Congress ended the MIS requirement in 1998.  No such study was

required for the ICC during the time relevant to this Complaint, and none is required under

current planning regulations.   Even assuming for argument's sake that plaintiffs could maintain

an action for failure to undertake an MIS notwithstanding the preclusion provisions of 23 U.S.C.

134(h) and the lack of an express or implied private right of action,  Count 13 should be

dismissed.

The MIS was a planning tool that provided a detailed review of a transportation corridor,

examining mobility, social, and transportation needs.  The MIS process was a requirement of the

FHWA/FTA planning regulations that were promulgated in 1993[13]  in response to the 1991

re-authorization of the Federal-Aid Highway Program although the MIS was not specifically

required by that legislation. See, Intermodal Surface Transportation Efficiency Act (ISTEA),

---

[12] Plaintiff pursued unsuccessfully an appeal of the Court's other adverse rulings, but did not choose to appeal this particular ruling.   See Sierra Club v. Slater, 120 F.3d 623, 629 ( 6th Cir. 1997).

[13] 58 Fed. Reg. 58064 (October 28, 1993), codified at 23 CFR Parts 450, 400 and 49 CFR Part 613 (1993).

Pub. L. 102-240 (1991). The MIS requirement attempted to improve the planning process by

reconciling and integrating the various requirements of ISTEA, the Clean Air Act, and NEPA.

See, 23 CFR 450.318.  In the next re-authorization, however, Congress ended the requirement

for a stand-alone MIS.  Section 1308 of the Transportation Equity Act for the 21st Century

(TEA-21), Pub. L. 105-178 (1998), directed the Secretary of Transportation to eliminate the MIS

as a separate requirement and to promulgate regulations integrating MIS concepts into the

transportation planning process.  Thus, the mandatory requirement for a separate MIS existed

only from 1993 to 1998.

　　　Despite extensive efforts, new planning regulations, including the Section 1308

elimination of MIS, were not promulgated immediately.  A notice of proposed rulemaking

(NPRM) amending the existing transportation planning regulations was published in the Federal

Register on May 25, 2000 (65 Fed. Reg. 33922), but in response to the number, extent, and

nature of concerns raised about the proposals,  as well as in anticipation of further statutory

guidance in the next FAHP re-authorization, the NPRM was withdrawn on September 20, 2002

(67 Fed. Reg. 59219).

　　　Nonetheless, the FHWA properly treated the requirements of TEA-21, including Section

1308, as being in effect and announced that, among other matters, it would take no action to

enforce the MIS requirement.  On February 2, 2001, interim guidance was issued providing

direction to State DOTs, MPOs and public transportation operators in implementing the TEA-21

statutory provisions.  Entitled "Implementing TEA-21 Planning Provisions," it noted that

"although new planning regulations have not been issued, the requirements in TEA-21 are in

effect," and instructed FHWA and FTA field offices to work with MPOs, State DOTs, and transit

22

operators "to ensure a basic level of compliance with TEA-21 planning requirements, based on the statutory language."  The guidance highlighted several TEA-21 requirements, including "MIS Integration." [14]  On February 22, 2005, the FHWA and the FTA also issued joint "Program Guidance on Linking the Transportation Planning and NEPA Processes," developed for State DOTs, MPOs, and public transportation operators, summarizing and further explaining current law and regulation, including MIS, and providing direction on how information, analysis, and products from metropolitan and statewide transportation planning processes could be incorporated into and relied upon in the NEPA process. [15]

Finally, the recently promulgated Final Rule on Metropolitan and Statewide Transportation Planning, 72 Fed. Reg. 7224-7286 (February 14, 2007) to be codified as 23 CFR Parts 450 and 500 and 49 CFR Part 613, that replaces the 1993 regulations, eliminates MIS as a separate requirement and integrates the MIS requirement into the planning process, in conformity with Section 1308 of TEA-21.  See 23 CFR 450.318 (72 Fed. Reg. 7274).  The Final Rule took effect on March 16, 2007.  The statutes, regulations, and guidance documents regarding MIS are all public records.  No stand-alone MIS has been required in metropolitan and statewide transportation planning since 1998.  Plaintiffs' contentions in Count 13 are without merit and should be dismissed.

---

[14] The guidance document may be accessed at http://www.fhwa.dot.gov/hep/tea21mem.htm. Similarly, a March 13, 2002, online discussion of MIS reiterated that the existing regulation governing MIS would not be enforced, although "States and MPOs are still at liberty to use the process if they choose and some have elected to do so." http://nepa.fhwa.dot.gov/ReNEPA/ReNepa.nsf/discussionDisplay?Open&id=2418F2B5D.

[15] The joint guidance document can be accessed at http://nepa.fhwa.dot.gov/ReNepa/ReNepa.nsf/aa5aec9f63be385c852568cc0055ea16/9fd918150a c2449685256fb10050726c?

CONCLUSION

As demonstrated above, the Court has no jurisdiction to entertain Counts 14 and 15 of the complaint, and they fail to state a cause of action.  On the basis of the arguments set forth, Counts 14 and 15 of the complaint should be dismissed.

Respectfully submitted this 27th day of April, 2007.

MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CYNTHIA J. MORRIS (D.C. Bar No. 358776)
SCOTT J. JORDAN
Environmental Defense Section
WELLS D. BURGESS ( D.C. Bar No. 477331)
RACHEL DOUGAN
Natural Resources Section
STACY STOLLER
Law and Policy Section
P.O. Box 3986
Washington, DC  20026-3986
(202) 616-7554 (Morris)
E-mail: C.J.Morris@usdoj.gov
(202) 305-0445 (Burgess)
E-mail: Wells.Burgess@usdoj.gov

By:     /s/ Wells D. Burgess
        Wells D. Burgess

MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CYNTHIA J. MORRIS (D.C. Bar No. 358776)
SCOTT J. JORDAN
Environmental Defense Section
WELLS D. BURGESS ( D.C. Bar No. 477331)
RACHEL DOUGAN
Natural Resources Section
STACY STOLLER
Law and Policy Section
P.O. Box 23986
Washington, DC  20026-3986
(202) 616-7554 (Morris)
E-mail: C.J.Morris@usdoj.gov
(202) 305-0445 (Burgess)
E-mail: Wells.Burgess@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Environmental Defense and Sierra Club, | ) | |
| Plaintiffs, | ) | Civil Action No. 06-2176 |
| v. | ) | |
| | ) | [PROPOSED] ORDER |
| United States Department of Transportation, | ) | |
| et. al., | ) | |
| Defendants. | ) | |

Upon reading and filing the motion and supporting memoranda of the United States

Department of Transportation ("DOT"), Mary E. Peters, in her official capacity as Secretary of

the DOT, the Federal Highway Administration ("FHWA"), and J. Richard Capka, in his official

capacity as FHWA Administrator (collectively, "the Federal Defendants") for an order pursuant

1

to Rules 12(b)(1) and  12 (b) (6), Fed. R. Civ. P., dismissing Counts 14 and 15 of the Complaint

on the alternative grounds that the Court lacks subject matter jurisdiction to adjudicate said

Counts and that said Counts fail to state a claim upon which relief can be granted, and after

reading and filing the opposing papers filed by plaintiffs, and hearing argument, if any,  in

support of and in opposition to the motion, and after due deliberation, it is hereby ORDERED:

that the Federal Defendants' motion is granted and Counts 14 and 15 of the Complaint in this

action are hereby dismissed, each party to bear its own costs.

Dated this     day of          , 2007.

_____
GLADYS M. KESSLER
UNITED STATES DISTRICT JUDGE