UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
ENVIRONMENTAL DEFENSE and      )
SIERRA CLUB, Inc.,             )
      Plaintiffs,              )
                               )   Civil Action No. 06-2176 (GK)
   v.                          )
                               )
UNITED STATES DEPARTMENT       )
OF TRANSPORTATION, et al.,     )
                               )
      Defendants.              )
_____)
```

**MEMORANDUM OPINION**

The controversial proposed $2.45 billion, 18-mile, six-lane tolled highway Maryland Route 200 (the "Intercounty Connector" or "ICC Project"), if built, would connect Montgomery and Prince George's counties in Maryland, and would pass through private property, parks and wetlands. Local debate about the ICC Project has persisted since it was first discussed in the 1950s. On May 29, 2006, the United States Department of Transportation ("DOT"), through the Federal Highway Administration ("FHWA"), issued the Record of Decision ("ROD") approving the ICC Project. This action arises out of that approval.

Plaintiffs contend that by approving the ICC Project, Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq.; the Federal Aid-Highways Act ("FAHA"), 23 U.S.C. § 101 et seq.; the Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq.; the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), 23

U.S.C. § 134; the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

This matter is now before the Court on the Motion to Transfer of Defendants DOT, Peters, FHWA and Capka [Dkt. No. 9], and Plaintiffs' Cross-Motion to Direct the USDOT Defendants to File the Administrative Records in This Court [Dkt. No. 11]. Upon consideration of the Motions, Oppositions, Reply, and the entire record herein, and for the reasons stated below, the Federal Defendants' Motion to Transfer is **granted** and Plaintiffs' Cross-Motion to Direct the USDOT Defendants to File the Administrative Records in This Court is **denied as moot.**

# I.   BACKGROUND

## A.   Background and Procedural History

Plaintiffs, Environmental Defense and Sierra Club, Inc., are non-profit environmental and conservation organizations. They bring this action for declaratory and injunctive relief on behalf of themselves and their members in Maryland and the District of Columbia. Defendants are United States Department of Transportation ("DOT"), Mary Peters,[1] Federal Highway Administration ("FHWA"), and J. Richard Capka[2] (collectively, the

---

[1] Mary Peters is sued in her official capacity as Secretary of Transportation for DOT.

[2] J. Richard Capka is sued in his official capacity as Administrator of FHWA.

"Federal Defendants"); as well as the Metropolitan Washington Council of Governments, Vincent C. Gray,[3] the National Capital Region Transportation Planning Board, and Katherine Hutchins.[4]

The proposed ICC is an 18-mile east-west tollway linking Interstate 270 in Montgomery County, Maryland, with Interstate 95 and U.S. Route 1 in Prince George's County, Maryland. Plaintiffs claim that the ICC would be the third largest highway construction project in the country. Compl. at ¶ 34. According to the Federal Defendants, the ICC Study Area, i.e. the geographical region examined to determine where direct impacts of the Project would be experienced, is located entirely within the State of Maryland. Defs.' Mot. at 4. Plaintiffs claim that "the proposed ICC would funnel 125,000 vehicles per day into residential neighborhoods and in close proximity to five schools where children will be exposed to dangerous levels of toxic and particulate matter air pollution. The proposed ICC would also destroy private property, wetlands, and other natural areas home to endangered species." Pls.' Opp'n at 2.

In 1997, the FHWA and Maryland State Highway Administration ("MdSHA") issued a Draft Environmental Impact Statement ("EIS") for an intercounty connector road similar to the current ICC Project.

---

[3] Vincent Gray is sued in his official capacity as Board Chair of the Metropolitan Washington Council of Governments.

[4] Katherine Hutchins is sued in her official capacity as Chairperson of the National Capital Region Transportation Planning Board.

Compl. at ¶ 35. That proposal was put on hold after the United States Department of the Interior and the Environmental Protection Agency indicated that it would have significant adverse environmental impacts. Id. at ¶¶ 36-39. The Project was revived in 2003, and the FHWA and MdSHA released a revised Draft EIS on November 22, 2004. Plaintiffs, the Prince George's County Council, and others submitted comments on the Draft EIS objecting to the proposed ICC. Id. at ¶¶ 43-47. The FHWA and MdSHA issued a Final EIS on January 3, 2006. Id. at ¶ 72. According to Defendants, after the issuance of the Final EIS, the determination that the Project met air quality standards (the "PM2.5 Conformity Determination") was prepared and opened for public comment by the FHWA, MdSHA and Maryland Transportation Authority. Defs.' Mot. at 5.

On May 29, 2006, the FHWA issued its ROD approving the ICC Project, and the FHWA and MdSHA published their notice of approval on June 23, 2006. Compl. at ¶¶ 272, 422.

On December 20, 2006, Plaintiffs filed the instant action in this Court. They claim that Defendants, in violation of NEPA: (a) developed an unlawfully narrow purpose and need statement for the ICC Project, (b) arbitrarily relied on the Montgomery County land use plan, (c) failed to consider reasonable alternatives to constructing the ICC, assess environmental impacts, or discuss mitigation, and (d) failed to discuss alleged inconsistencies with

Maryland law.  They also claim related violations of FAHA resulting from, inter alia, the Federal Defendants' alleged failure to consider appropriate alternatives, determine adverse environmental effects, and mitigate those effects.  They raise several claims related to air quality, including allegations of error in the PM2.5 Conformity Determination, the assessment of air quality impacts, and the comment period.  Their remaining claims allege failures in approval of the Metropolitan Transportation Improvement Program ("TIP") and the National Capital Region's Constrained Long-Range Plan ("CLRP"),[5] as well as a violation of FOIA.

Plaintiffs seek a declaration that the approval of the ICC violated the federal statutes cited above, and ask the Court to set aside the approval and remand the issue to the Federal Defendants for preparation of a revised EIS and an adequate analysis of alternatives and mitigation.  They also ask the Court to set aside the Metropolitan TIP and CLRP because they included the ICC without properly analyzing its impact on those Plans' ability to meet national or local transportation objectives, in violation of local law.  They further seek an injunction preventing the Federal Defendants from transferring or authorizing funds approved prior to judgment for any action related to construction of the ICC until

---

[5] According to Plaintiffs, the CLRP "is a comprehensive plan of transportation projects and a system-wide collection of strategies that the [Metropolitan Planning Organization] seeks to implement over the next 25 years."  Compl. ¶ 52.

this case has been decided.

Later in the same day on which Plaintiffs filed the present lawsuit, four different plaintiffs filed a separate action against the Federal Defendants in this suit as well as four additional defendants in the United States District Court for the District of Maryland. Audubon Naturalist Soc'y, Inc. v. United States Dep't of Transp., No. 06-3386 (D. Md. filed Dec. 20, 2006) (the "Maryland Action"). Plaintiffs in the Maryland Action are the Audubon Naturalist Society of the Central Atlantic States, the Maryland Native Plant Society, and Roger Metcalf and Eve Burton (the "Metcalf-Burtons"). The Metcalf-Burtons are a married couple who live in a home located in Montgomery County in an area to be affected by the ICC Project. Plaintiffs in the Maryland Action are suing the Federal Defendants in this lawsuit, as well as Nelson Castellanos,[6] the United States Army Corps of Engineers ("ACOE"), Colonel Peter W. Mueller,[7] and Janet M. Vine.[8]

The Maryland Action plaintiffs claim that the defendants failed: (a) to develop a reasonable purpose and need statement for the ICC Project, as required by NEPA, (b) to consider reasonable

---

[6] Nelson Castellanos is sued in his official capacity as the Division Administrator of FHWA, Maryland Division.

[7] Peter Mueller is sued in his official capacity as the Commander and District Engineer of ACOE, Baltimore District.

[8] Janet Vine is sued in her official capacity as the Chief, Regulatory Branch of ACOE, Baltimore District.

alternatives to constructing the ICC as mandated by NEPA, and (c) to conduct an accurate assessment of and mitigation for the impacts of the Project on protected parkland. They also claim that certain ACOE decisions violated the Clean Water Act, 33 U.S.C. § 1344.

Plaintiffs in the Maryland Action ask the court to vacate the ROD for the ICC Project, order that the defendants conduct a new EIS, vacate the Clean Water Act permit, and enjoin the defendants from taking any steps that will cause irreparable harm, such as beginning construction, condemning property, or putting construction contracts out to bid. Defs.' Mot. Ex. A ("Maryland Action Compl.") Demand for Relief ¶ 7.

On January 10, 2007, Plaintiffs filed a Notice of Related Case indicating that this case and the Maryland Action "involve[] common issues of fact" and "grow[] out of the same event or transaction." Dkt. No. 4.

On February 21, 2007, the Federal Defendants filed the instant Motion to Transfer. They argue that this case should be transferred to the United States District Court for the District of Maryland, where it may be consolidated with the Maryland Action. They contend that both cases "raise similar claims, challenging the same administrative decision, are based on the same administrative record, and seek the same relief, thus warranting consolidation." Defs.' Reply at 1. Plaintiffs opposed the Motion on March 5, 2007,

and the Federal Defendants replied on March 15, 2007.[9]

## II. ANALYSIS

### A. This Action Must Be Transferred to the District of Maryland

The standards governing transfer are well-settled. The federal venue transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) ("Section 1404(a)"). Section 1404(a) vests "discretion in the district court[] to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (internal citation omitted). As the moving party, Defendants bear the burden of establishing that the transfer of these actions to another federal district is proper. See Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006).

The parties do not dispute, and the Court agrees, that this action could have been brought in the District of Maryland pursuant to 28 U.S.C. § 1391(e), since a substantial part of the events or omissions giving rise to the claims in this case occurred in Maryland. Accordingly, the Federal Defendants must demonstrate

---

[9] On March 9, 2007, the four non-Federal Defendants filed a Memorandum indicating their concurrence in the Motion to Transfer [Dkt. No. 14].

that the convenience of the parties and the interest of justice weigh in favor of transfer. The Court weighs a number of private and public factors in that determination. See <u>Trout Unlimited v. United States Dep't of Agriculture</u>, 944 F. Supp. 13, 16 (D.D.C. 1996). The private interest considerations include

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

<u>Berenson v. Nat'l Fin. Services, LLC</u>, 319 F. Supp. 2d 1, 2-3 (D.D.C 2004) (internal citations omitted). The public interest considerations include "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home." <u>Id.</u>

### 1. The Public Interest Factors Weigh in Favor of Transfer to the District of Maryland

The most persuasive factor supporting transfer is Maryland's strong localized interest in this dispute.[10] This case constitutes

---

[10] The transferee's familiarity with the governing laws has little bearing in this case because Plaintiffs bring suit under federal law, and "the transferee federal court is competent to decide federal issues correctly." <u>Sierra Club v. Flowers</u>, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003) (quoting <u>In re Korean Air Lines Disaster of Sept. 1, 1983</u>, 829 F.2d 1171, 1175 (D.C. Cir. 1987)); see also <u>Nat'l Wildlife Fed'n v. Harvey</u>, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) ("Where plaintiffs' claims are based on federal environmental law, this Court follows 'the principle that the

a far greater "matter of great public concern" to the citizens of Maryland than to the citizens of the District of Columbia. See Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 939 F. Supp. 1, 4 (D.D.C. 1996). The highway will be located solely in the State of Maryland, as is the Study Area used to determine where direct impacts would be experienced. Defs.' Mot. at 4. The ICC will displace Maryland homes and provide a transportation option for Maryland residents. Its center of gravity is in Maryland. Transfer to Maryland will facilitate the ability of "local citizens to attend and observe the proceedings of this case." Hawksbill, 939 F. Supp. at 3 n.5.

Plaintiffs emphasize that one purpose of the ICC Project is to serve the transportation needs of the Washington Metropolitan area, including the District of Columbia. Pls.' Opp'n at 7. They also note that some environmental effects will reach the District of Columbia, including any impact the Project may have on the groundwater in the Patuxent Aquifer, which is shared by the Study Area and the District of Columbia. Id. at 8. While there is no denying the proximity of this jurisdiction to Maryland, and while there may well be potential collateral effects from the ICC Project on the District of Columbia, fundamentally this dispute centers on

---

transferee federal court is competent to decide federal issues correctly.'"). Nor is the relative congestion of the courts dispositive. The parties do not dispute that the case will likely be decided on cross motions for summary judgment.

a highway on Maryland land.[11]  "Land is a localized interest because its management directly touches local citizens."  S. Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 88 (D.D.C. 2004).

Plaintiffs also argue that this case raises issues of national significance militating in favor of litigation in this forum. Although the ICC is a significant and expensive project involving federal funding and federal approval processes, those considerations do not outweigh Maryland's interest in a case challenging a highway entirely within its borders.[12]  See Nat'l Wildlife Fed'n, 437 F. Supp. 2d at 49-50 ("While the fact that Plaintiffs' claims invoke federal law, relate to the Everglades ecosystem, and are brought by a national environmental organization suggests that the case has a 'national aspect,' the extent and degree of Florida's interest [in a project within its borders] is indisputable.") (citing Sierra Club, 276 F. Supp. 2d at 71).

The public interest in judicial economy also weighs heavily in favor of transfer.  To rebut the argument for consolidation,

---

[11] According to the consulting firm to the MdSHA, of the 4,757 comments to the ICC Draft EIS, only 204 comments, i.e. four percent, displayed a return address located in Washington D.C. Defs.' Reply Ex. G ("Jones Decl.") at ¶ 3.  Of the 786 pieces of correspondence submitted during the Final EIS comment period, 30, i.e. less than four percent, included a return address in Washington D.C.  Id. at ¶ 4.

[12] Two-thirds of the funding for the Project will be borne by the State of Maryland; none will be borne by the District of Columbia.  Defs.' Reply at 13.

Plaintiffs emphasize distinctions between the NEPA claims of the two cases. A review of the complaints, however, demonstrates that both suits challenge the Federal Defendants' alleged failure to properly consider alternatives to the ICC Project or to properly propose or explain procedures for mitigation of adverse environmental impacts. Both suits allege that the purpose and need statement of the EIS improperly defined the Project so as to preclude consideration of alternatives. Both suits allege that those failures violate NEPA and the APA. Compl. ¶¶ 363-412; Maryland Action Compl. ¶¶ 86-142. And, significantly, both suits seek as their ultimate relief declaratory and injunctive relief invalidating the Federal Defendants' approval of the ICC Project.

Moreover, there is a sizable administrative record in these cases. Although Plaintiffs have indicated that the administrative record is missing certain materials, at this time it consists of nearly 200,000 pages of material, or approximately 50 linear feet of documents. Pls.' Opp'n at 27; Defs.' Reply at 21. Judicial economy strongly favors consolidation of these two large cases so that the overlapping issues and records may be considered together.

"Allowing these two suits to proceed unconsolidated in separate districts would 'lead[] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.' Not only would discovery, motions practice, and trial be duplicated, but there would be a significant risk that this court and the

-12-

[Maryland] court would issue inconsistent orders subjecting [Defendants] to inconsistent obligations. Such considerations weigh heavily in favor of transfer." Cal. Farm Bureau Fed'n v. Badgley, No. 02-2328, 2005 U.S. Dist. LEXIS 12861, at *7 (D.D.C. June 29, 2005) (citing Continental Grain Co. v. The FBL, 364 U.S. 19, 26 (1960)); see also 15 Charles A. Wright, Arthur R. Miller & E. Cooper, Federal Practice and Procedure § 3854 (3d Ed. 2007) (noting that "a number of federal courts have considered [the interest of justice] factor decisive--outweighing the other statutory factors--in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction . . ." and that "with great frequency . . . cases have been transferred to a forum in which other actions that arose from the same transaction or event as that at issue in the transferor court or were related to them in some fashion were pending").[13]

Maryland clearly is the more appropriate forum for this litigation; the public interest factors strongly favor transfer to that jurisdiction. It is the location where Plaintiffs' claims arose, where Defendants desire to have these matters transferred, where the case is a matter of great public concern to the State citizens, and where a related case is pending.

---

[13] Plaintiffs' argument that the first-filed rule mandates consolidation in this Court carries little weight where, as here, both cases were filed on the same day within hours of each other.

### 2. The Private Interest Factors Do Not Weigh Heavily Against Transfer to the District of Maryland

The private interest factors do not weigh heavily in favor of retaining the case in this jurisdiction. The Federal Defendants clearly prefer Maryland; they have moved to transfer this case to the District of Maryland. Once transferred, they intend to seek consolidation of this case with the Maryland Action, in which they are also defendants. Considering the substantial overlap in many of the claims, consolidation would substantially benefit the Federal Defendants.[14] Moreover, the remaining Defendants in this action support transfer, whereas the non-Federal Defendants in the Maryland Action do not support transfer of that Action to this District Court. See Defs.' Mot. at 13.

As Plaintiffs concede, the convenience of the parties would not be greatly affected whether this case remains in the District of Columbia or is transferred to Maryland, given the close proximity of the two jurisdictions. See Pls.' Opp'n at 9-10 n.10 ("[N]o party in either action will be significantly inconvenienced by having to travel an additional fifteen miles to litigate in another forum."); see also Onyeneho, 466 F. Supp. 2d at 3-4 (citing

---

[14] Plaintiffs argue that because the Federal Defendants officially reside in the District of Columbia, their preference for litigating outside of their home forum suggests forum shopping. Pls.' Opp'n at 13-14. The Federal Defendants have articulated meaningful reasons for transfer to Maryland, including efficiency and convenience, sufficient to refute any inference of forum shopping.

Liban v. Churchey Group II, LLC, 305 F. Supp. 2d 136, 142 (D.D.C. 2004)). Similarly, the parties do not contend that any witness would be unavailable in either forum. The Federal Defendants argue that although neither forum is more convenient for this action, Maryland is more convenient for the parties in the Maryland Action. Although parties in the Maryland Action may have greater access to certain ICC planning documents, any difference between the two lawsuits is likely to be de minimus.

Plaintiffs protest that if this action is transferred to Maryland, they will suffer a "serious inconvenience" in having to obtain local counsel to pursue their claims in the District of Maryland. Pls.' Opp'n at 10 n.10. The Court is not persuaded. Plaintiffs represent that they failed to locate counsel specifically admitted to practice in Maryland, with the time required to prosecute this case and willing to represent Plaintiffs on a pro bono basis. Pls.' Opp'n Ex. A ("Replogle Decl.") at ¶ 9. Attorneys at the Institute for Public Representation at the Georgetown University Law Center, who are not admitted to practice in Maryland, have agreed to represent Environmental Defense on a pro bono basis. Id. at ¶ 10. The District of Maryland allows for pro hac vice admission of out-of-state counsel, however, and there is no reason to believe that Plaintiffs would have difficulty retaining counsel for the limited purpose of acting as local counsel, especially in light of the importance of the issues to the

-15-

citizens of Maryland.[15]  See D. Md. R. 101.1.b.

Most significantly, this case is about plans to build a highway between two Maryland counties, which will displace Maryland residents and homes, and which will affect Maryland parks and wetlands.  Courts frequently grant transfer motions where the circumstances giving rise to the controversy occurred in the transferee forum.  Berenson, 319 F. Supp. 2d at 4 (transferring case to Massachusetts where corporate decisions at issue were made in Boston); S. Utah Wilderness Alliance, 315 F. Supp. 2d at 88 (transferring case to Utah where government decisions giving rise to dispute were made).  This factor weighs heavily in favor of transfer.

Plaintiffs make much of the fact that the federal decisions and approvals relating to the ICC Project were made in the District of Columbia or "by agencies headquartered in the District of Columbia which were, without doubt, involved in the ultimate decisions reached by the agency."  Pls.' Opp'n at 15; see also id.

---

[15] Plaintiffs also take the position that transfer would impose a hardship on their counsel, who have invested time in mastering the administrative record and drafting the Complaint and motions in this case.  Transfer will not impact either the record or the Complaint, which alleges violations of federal law.  Moreover, Plaintiffs have three procedural motions pending: a motion to strike the State of Maryland's motion to intervene or for leave to file a reply; a separate motion for leave to file a reply to the State of Maryland's motion; and a motion for extension of time, excess pages, and to file a consolidated response to Defendants' motions to dismiss.  In light of the nature of these motions, transfer of this case will not impose a hardship on Plaintiffs' counsel.

at 6-7. Although the decisions and approvals may have been made within the borders of the District of Columbia, the object of the decisions and approvals was the proposed Maryland highway.

As Defendants point out, the environmental documents and supporting technical reports used to make the decisions were made available to the public in Maryland, community meetings on the draft EIS were held in Maryland, mailings were sent to residents of the Study Area and public comments were directed to the Maryland SHA Project Manager, the Maryland Transportation Authority Deputy Director, and to Mr. Castellanos at the FHWA Maryland Division office. Defs.' Mot. at 4-5. The PM2.5 Conformity Determination, also challenged in this action, was prepared by Maryland and federal agencies, and comments were directed to the Project Manager for MdSHA in Baltimore. Id. The fact that the actual decisions themselves occurred within the confines of the District of Columbia is not sufficient to overcome the roots of that this case has in Maryland.

Nor does the ease of access to documentation regarding the development and evaluation of the ICC Project weigh heavily in favor of either jurisdiction. The parties make no representations regarding the location of the greater volume of documents. However, the case law in this jurisdiction is clear that the location of documents does not weigh heavily in the venue analysis. See Oceanic Exploration Co. v. ConocoPhillips, Inc., No. 04-332,

2007 U.S. Dist. LEXIS 7915, *25-26 (D.D.C. Feb. 5, 2007) (citing Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., 196 F. Supp. 2d 21, 36 (D.D.C. 2002)("[T]he location of documents, given modern technology, is less important in determining the convenience of the parties.")).

The crux of Plaintiffs' opposition is that their choice of forum should be granted deference. See Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.D.C. 1996) ("The court must afford some deference to the plaintiff's choice of forum."). "While a Plaintiff's choice of forum is certainly entitled to some deference, that is less true where, as here, "there is an insubstantial factual nexus with the plaintiff's choice.'" Hawksbill, 939 F. Supp. at 3 (D.D.C. 1996) (citing Comptroller of Currency v. Calhoun Nat'l Bank, 626 F. Supp. 137, 140 n.9 (D.D.C 1985)). In this case, concerns for judicial economy and the public interest of Maryland citizens significantly outweigh any deference to Plaintiffs' choice of forum.

The highway Project and the areas allegedly harmed by the Project are located in Maryland. As discussed above, to establish a factual nexus with this forum, Plaintiffs point to decisions and approvals of District of Columbia-based officials that are known or presumed to have occurred in the District of Columbia. Although that may provide some nexus to this forum, even those decisions and approvals made in the District of Columbia were concerned solely

with the Maryland highway and its impact on Maryland. Accordingly, "[a]lthough Plaintiff's choice of forum is entitled to great consideration, it is not determinative when other factors strongly militate, as they do here, in favor of transfer." Claasen v. Brown, No. 94-1018, 1996 U.S. Dist. LEXIS 1872, *18 (D.D.C. Feb 16, 1996).

## III. CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Transfer is **granted** and Plaintiffs' Cross-Motion to Direct the USDOT Defendants to File the Administrative Records in This Court is **denied as moot.**

An Order will issue with this opinion.

May 17, 2007

/s/
GLADYS KESSLER
U.S. DISTRICT JUDGE